ROBERT B. BUCHANAN et al., Appellants, v.
SAMUEL M. KENNARD et al.

**In Banc, April 11, 1911.**

1. **CHARITY: Public or Private: Essential Elements.** Where (1) the objects of the charity are indefinite, vague and uncertain, and (2) the grant to trustees is made in perpetuity, the bequest cannot be upheld as a private trust, but if upheld at all must be as a public charity; for either of these conditions would render invalid a devise or bequest intended as a private trust, and both are recognized as valid (the first as essential) in a public charity.

2. ———: ———: **Statute of Charitable Uses.** Not only is the Statute of Charitable Uses (43 Elizabeth ch. 4) in force in Missouri, but the common law of England upon the subject of such uses, as it existed at the time of and before the enactment of that statute, is also in force here. That statute was intended to include all the leading charities then known, and it established an enumeration, or kind of definition, standard or test, to which all gifts or grants in trust could be brought, in order to determine whether they were charitable; but it cannot be looked to as the sole test of what is a public charity. Many other uses not named therein, and not within its strict letter, but which, coming within its spirit, equity and analogy, are considered charitable. Under the common law and this statute a hospital for the care of "sick and injured persons" is a public charity, though such persons may not be "aged, impotent and poor people"—the words used in the statute.

3. ———: ———: **Hospital for Sick and Injured: Barnes Hospital.** A bequest of a large sum of money to three persons and their successors "in trust for the purpose of erecting and maintaining" on a designated tract of ground "a hospital for sick and injured persons, without distinction of creed, under the auspices of the Methodist Episcopal Church South of the United States or its successors, and under such rules and regulations as said trustees and their successors shall from time to time establish and maintain," creates a public charity, although the words "sick and injured persons" are not found in the Statute of Charitable Uses. It is not the law that such a bequest is invalid, as a public charity, unless its use is limited to "poor people."

4. ———: ———: ———: **Definite Beneficiaries.** Nor was it necessary that the said bequest should be more definite as to the selection of the objects of the public charity, or for

administering or carrying out the purposes of the gift, than it was made in the above provision of the will. It applies to all "sick or injured persons"—to the rich and poor alike.

5. ———: ———; **Burdened With Maintenance of Grave: And Support of Relative.** The fact that the gift to the trustees to establish a hospital is burdened with the payment of a small sum to a relative of testator for his maintenance for life, and of another small sum for keeping testator's grave in repair, being mere charges upon the fund bequeathed for the principal charity and their effect being to diminish it to that extent, does not affect the validity of the bequest for the erection and maintenance of a hospital for the sick and injured.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*A. R. Russell, T. J. Rowe, A. M. Frumberg, H. N. Moore* and *E. J. O'Brien* for appellants.

(1) A trust violating the rule against perpetuities is void, unless the object and purpose of such trust is to create a valid public charity. 2 Perry on Trusts (5 Ed.), sec. 687; 2 Underhill on Wills, 1195; Johnson v. Holifield, 79 Ala. 423; Troutman v. Orphans' Home, 66 Kas. 1; Hilliard v. Miller, 10 Pa. St. 326; Duke of Norfolk's Case, 1 Vern. 164; Bank v. Longfellow, 96 Mo. App. 385; Mason v. Perry, 22 R. I. 475; Coit v. Comstock, 51 Conn. 352; Detwiller v. Hartman, 37 N. J. Eq. 347. (2) A trust in which the objects and purposes are not specifically stated and the beneficiaries clearly designated is void, unless the object and purpose of the trust is charitable in a legal sense. Nichols v. Allen, 130 Mass. 211; Schmucker's Estate v. Reel, 61 Mo. 592; Taylor v. Keep, 2 Ill. 368; Fountain v. Ravenel, 17 How. 369; Pennoyer v. Wadhams, 20 Ore. 278; Chambers v. St. Louis, 29 Mo. 543; Morice v. Bishop of Durham, 9 Ves. 399, 10 Ves. 541. (3) The trust created by the will so far as it relates to the founding of the hospital is not a legal and valid public

charity, and is therefore void. Jones v. Williams, Amb. 651; Hinckley's Estate, 58 Cal. 457; Commonwealth v. Thomas, 119 Ky. 208; Troutman v. Orphans' Home, 66 Kas. 1; Chambers v. St. Louis, 29 Mo. 543; Crow ex rel. v. Clay County, 196 Mo. 234; 2 Story, Eq. Jur. sec. 1155; Morice v. Bishop of Durham, 9 Ves. 399; Taylor v. Keep, 2 Ill. App. 368; Commissioners v. Pemsel, (1891), A. C. 531; Century Dict., tit. "Hospital;" Murray's New English Dict., tit. "Hospital;" Gitzhoffen v. Hospital Assn., 32 Utah, 46; Bridgman's Duke on Charitable Uses, 122; Attorney-General v. Northumberland, 47 L. J. (Ch.) 571; Coleman v. O'Leary, 114 Ky. 388; Kelly v. Nichols, 18 R. I. 62; In re Cullimore's Trust, 27 L. R. (Ir.) 18; In re Clark's Trust, L. R., 1 Ch. Div. 500; Buck v. Roper, 79 Ala. 138; In re Buck (1896), 2 Ch. 727; Petersburg v. Mechanics' Assn., 78 Va. 431; Tyree v. Bingham, 100 Mo. 451; Camp v. Crocker, 54 Conn. 21; Nichols v. Allen, 130 Mass. 211; In re Macduff, 65 L. J. Ch. 703, 74 L. T. 706; Nash v. Morley, 5 Beav. 183; In re Gassiot, 70 L. J. Ch. 242; Grant v. Saunders, 121 Iowa, 80; Kronshage v. Varrell, 120 Wis. 161; In re Good (1905), 2 Ch. 60; Attorney-General v. Haberdashers' Co., 1 Myl. & K. 428; Schmucker's Estate v. Reel, 61 Mo. 592; In re Sidney (1908), 1 Ch. 488, C. A.; Kendall v. Granger, 5 Beav. 300; Barkley v. Donnelley, 112 Mo. 561; State ex rel. v. Powers, 10 Mo. App. 263, 74 Mo. 476; Adams v. Hospital, 122 Mo. App. 675; Ingraham v. Ingraham, 169 Ill. 432; Russell v. Atwater, 49 Minn. 60; Brigham v. Hospital, 126 Fed. 796, 134 Fed. 513; Woodruff v. Marsh, 63 Conn. 125; Ould v. Hospital, 95 U. S. 303; Jones v. Habersham, 107 U. S. 174; Elliott v. Mayor, 3 Rawle (Pa.) 170; Burbank v. Burbank, 152 Mass. 254; Corporation of Reading v. Lane, Duke 81; Attorney-General v. Kell, 2 Beav. 575; Pelham v. Anderson, 2 Eden, 296; Vaughn v. Farrar, 2 Ves. Sr. 182; Masters v. Masters, 1 P. Wms. 421. (4) The court cannot make a will for the testator, but must ascertain

the intention from the language used in the will. Board of Trustees v. May, 201 Mo. 360; Reeves v. Reeves, 5 Lea (Tenn.) 653; Kelly v. Nichols, 17 R. I. 323; Attorney-General v. Hunter, 68 L. J. Ch. 449; Holland v. Alcock, 108 N. Y. 312; Adye v. Smith, 44 Conn. 60; Taylor v. Keep, 2 Ill. App. 368; Mason v. Perry, 22 R. I. 475; Hadley v. Forsee, 203 Mo. 418; Wells v. Fuchs, 226 Mo. 97. (5) A trust is not charitable unless the testator has devoted the fund to some charitable purpose so definitely and exclusively that the trustees cannot apply any part of such fund to a non-charitable purpose without violating the express terms of the trust. Morice v. Bishop of Durham, 9 Ves. 399, 10 Ves. 541; Mason v. Perry, 22 R. I. 475; Kelly v. Nichols, 17 R. I. 323; Attorney-General v. Soule, 28 Mich. 153; Nichols v. Allen, 130 Mass. 212; Taylor v. Keep, 2 Ill. App. 368; Kinike's Estate, 155 Pa. St. 101; In re Shattuck's Will, 193 N. Y. 446; In re Sutro's Estate, 102 Pac. (Cal.) 923; Johnson v. Johnson, 92 Tenn. 559; Kendall v. Granger, 5 Beav. 300; Fifield v. Van Wyck (Freeman's note), 64 Am. St. 756; 2 Perry on Trusts (5 Ed.), sec. 732; James v. Allen, 3 Meriv. 19; Grimond v. Grimond (1905), A. C. 124; In re McCauley, 28 Ont. 610. (6) A charitable trust must be for the general public use, that is, the benefit must inure to the entire public. Jones v. Williams, Amb. 651; Bank v. Longfellow, 96 Mo. App. 385; Cocks v. Manners, L. R. 12 Eq. 574; Festorazzi v. Catholic Church, 104 Ala. 327; In re Lennon's Estate, 92 Pac. (Cal.) 870; Lackland v. Walker, 151 Mo. 210; Coe v. Washington Mills, 149 Mass. 547; Drury v. Natick, 10 Allen, 180; Field v. Theological Seminary, 41 Fed. 371; Powers v. Powers, 29 N. Y. Supp. 950; Institute v. Delaware County, 94 Pa. St. 166; In re Nottage (1895), 2 Ch. 653; Pennoyer v. Wadhams, 20 Ore. 278; Troutman v. Orphans' Home, 66 Kas. 1; Tyssen's Charitable Bequests, 4. (7) There is no public benefit in the treatment of sickness or injury un-

less such treatment is restricted to the poor, whose support is a public duty. State ex rel. v. Switzler, 143 Mo. 287; Deal v. Mississippi County, 107 Mo. 464; State ex rel. v. Pike County, 144 Mo. 275; Loan Assn. v. Topeka, 21 Wall. 655; R. S. 1899, secs. 8993-8994; State v. Osawkee Township, 14 Kas. 418; Deering v. Peterson, 75 Minn. 118; Thomas v. Edmonson County, 8 Ky. Law R. 265; McIntyre v. Pembroke, 53 N. H. 467; Hugging v. Carter County, 24 Ky. Law R. 1893; Dodge County v. Diers, 69 Neb. 331; Board of Health v. County Commissioners, 89 Minn. 402; Labrie v. Manchester, 59 N. H. 120; Clinton v. Clinton, 61 Iowa 207; Commissioners v. Fertich, 18 Ind. App. 1; Knightstown v. Horner, 36 Ind. App. 139; Vionet v. First Municipality, 4 La. Ann. 43; Tollefson v. Ottawa, 228 Ill. 134; In re Yturburru, 134 Cal. 507; Keeley Institute v. Milwaukee County, 95 Wis. 153; In re House, 23 Colo. 89; Webster v. Police Jury, 51 La. Ann. 1204; Baltimore v. Keeley Institute, 81 Md. 106; Leavitt v. Morris, 105 Minn. 170. (8) A hospital merely for sick and injured persons is not necessarily charitable in the sense of fulfilling a public purpose. People v. Fitch, 39 N. Y. Supp. 927; Adams v. University Hospital, 122 Mo. App. 675; Phillips v. Railroad, 211 Mo. 419; Washingtonian Home v. Chicago, 157 Ill. 414; State ex rel. v. Powers, 10 Mo. App. 263; County of Hennepin v. Brothers of Gethsemane, 27 Minn. 460; Board of Review v. Chicago Polyclinic, 233 Ill. 268; People v. Ravenswood Hospital, 238 Ill. 137; Gray Street Infirmary v. Louisville, 23 Ky. Law R. 1274; Wathen v. Louisville, 27 Ky. Law R. 635; Thiel College v. Mercer County, 101 Pa. St. 530; Webber Hospital Assn. v. McKenzie, 104 Me. 320; Gitzhoffen v. Hospital Assn., 32 Utah, 46; Brown v. La Societe Francaise, 138 Cal. 475. (9) The care of a burial lot is a strictly private purpose. Lloyd v. Lloyd, 2 Sim. (N. S.) 255; Rickard v. Robson, 31 Beav. 244; Fowler v. Fowler, 33 Beav. 616; Hoare v. Osborne, L. R. 1

Eq. 585; Johnson v. Holifield, 79 Ala. 423; Coit v. Comstock, 51 Conn. 352; Bates v. Bates, 134 Mass. 110; Kelly v. Nichols, 17 R. I. 323; Knox v. Knox, 9 W. Va. 124; Hartson v. Elden, 500 N. J. Eq. 522; Corle's Case, 61 N. J. Eq. 409; Van Syckel v. Johnson, 70 Atl. (N. J. Eq.) 657.    (10)    Where an unapportioned and unascertainable portion of a trust fund is bestowed upon an invalid or unlawful purpose, the whole trust fails, regardless of the validity of the other portions.    Attorney-General v. Hinxman, 2 Jac. & W. 270; Fowler v. Fowler, 33 Beav. 616, 10 Jur. (N. S.) 648; Cramp v. Playfoot, 4 Kay & J. 481; Chapman v. Brown, 6 Ves. 404; Beekman v. People, 27 Barb. 280; Limbrey v. Gurr, 6 Madd. 151; Attorney-General v. Hunter, 68 L. J. Ch. 449; Mason v. Perry, 22 R. I. 475; Kelly v. Nichols, 17 R. I. 306; Coit v. Comstock, 51 Conn. 352; Van Syckel v. Johnson, 70 Atl. (N. J. Eq.) 657; Tilden v. Green, 130 N. Y. 29; Robards v. Brown, 167 Mo. 456; Stevens v. De La Vaulx, 166 Mo. 20; Lockridge v. Mace, 109 Mo. 162; Sheppard v. Fisher, 206 Mo. 208.    (11)    In a suit between the heirs and the trustees to determine whether there is a proper bequest to a charitable use, costs should be allowed to all parties out of the fund or estate.    2 Perry on Trusts, sec. 747; 22 Ency. Pl. and Pr. 1210; Currie v. Pye, 17 Ves. 462; Bliss v. American Bible Soc., 2 Allen 334; Attorney-General v. Moore, 19 N. J. Eq. 509; Ingraham v. Ingraham, 169 Ill. 450; Lombard v. Witbeck, 173 Ill. 396; Arnold v. Alden, 173 Ill. 229; Tracey v. Murray, 44 Mich. 109; McClary v. Stull, 44 Neb. 175; Enders v. Enders, 49 Minn. 182; Straw v. East Maine Conference, 67 Me. 493; Drew v. Wakefield, 54 Me. 291; Moore v. Alden, 80 Me. 301; Dane v. Home for Women, 111 Mass. 132.

*Thomas F. Galt* and *A. & J. F. Lee* for respondents.

(1)   Upon point 1 and 2 as made by appellants there is no issue.   (2)   The will of Robert A. Barnes created a public charitable trust in these defendant trustees, because:   (a)   It was devised in trust for the benefit of an unlimited number of undesignated persons; (b)   For the purpose of healing the sick and injured generally—a charity; (c)   No person engaged in the management of the charity could derive any profit from it.   Jackson v. Philips, 14 Allen, 356; Cawse v. Nottingham, (1891) 1 Q. B. 585; Ould v. Washington Hospital, 95 U. S. 310; 6 Ency. Law and Pro. 897, 902; Vidal v. Philadelphia, 2 How. (U. S.) 127; Mo. Hist. Society v. Acad. of Science, 94 Mo. 459; Hinckley Estate, 58 Cal. 457; Troutman v. Orphans' Home, 66 Kas. 1; Tyssen, Charitable Bequests, 4-5; State ex rel. v. Powers, 10 Mo. App. 263; Bispham's Principles of Equity (6 Ed.), par. 12; Perry on Trusts; Adams v. Hospital, 122 Mo. App. 675; McDonald v. Hospital, 120 Mass. 432; Hearns v. Hospital, 68 Conn. 98; Burke v. Roper, 79 Ala. 138; County v. Brotherhood, 27 Minn. 460; Doughten v. Vandevar, 5 Del. Ch. 51; Weeks v. Habson, 150 Mass. 377; Hayes's Will, 171 Ill. 462; Railroad v. Artist, 60 Fed. 365; Railroad v. Artist, 19 U. S. App. 612; Long v. Rosedale Cemetery, 84 Fed. 135; Thornton v. Franklin Square House, 22 L. R. A. (N. S.) 487; Webster v. Wiggin, 19 R. I. 73; Hewitt v. Aid Assn., 7 L. R. A. (N. S.) 497; 2 Rev. Stats. N. Y. (9 Ed.) 1896; Laws 1893, ch. 498; Burbank v. Burbank, 152 Mass. 234; Downs v. Hospital, 101 Mich. 555; Ellenhorst v. Pythian, 110 Ky. 923; Jenkins v. Berry, 118 Ky. 350; St. Francis v. Board, 231 Ill. 317; Board of Review v. Polyclinic, 233 Ill. 268.   (3)   Where the intent of the testator to create a charitable trust is once shown, courts of equity will construe the trust with the greatest liberality.   Attorney-General v.

Haberdashers' Co., 1 Myl. & K. 428; Mason v. Perry, 22 R. I. 475; Ingraham v. Ingraham, 169 Ill. 450; 1 Story, Eq. Jur. 1165; Perry on Trusts, 630; Sanderson v. White, 18 Pick. 333; Doughten v. Vandever, 5 Del. Ch. 51. (4) The will of Mr. Barnes devoted the trust fund so definitely and exclusively to a charitable purpose that the trustees cannot apply any part of such fund to a non-charitable purpose without violating the express terms of the trust. Ellenhorst v. Pythian, 110 Ky. 923; Johnson v. Johnson, 92 Tenn. 559; State v. Smith, 16 Lea, 670; McDonald v. Hospital, 120 Mass. 432. (5) It is not necessary that the benefit of a charitable trust inure to the public in such manner that every member of the public is entitled to share directly in its benefits. It is sufficient if it is for the benefit of the public, as stated under point 2. (6) A hospital for sick and injured persons generally without distinction as to rich or poor, and without profit, is necessarily charitable in the sense of conferring a public benefit. Jenkins v. Berry, 11 Ky. 350; County of Hennepin v. Brotherhood, 27 Minn. 460; St. Francis v. Board, 231 Ill. 317; Board of Review v. Polyclinic, 233 Ill. 268. (7) A hospital for sick and injured persons generally without profit to any one in the operation of the hospital is necessarily charitable in the sense of fulfilling a public purpose. McDonald v. Hospital, 120 Mass. 432; Hearns v. Waterbury Hospital, 66 Conn. 98; Downs v. Hospital, 101 Mich. 555; County of Hennepin v. Brotherhood, 27 Minn. 460; St. Francis v. Board, supra; Board of Review v. Polyclinic, supra; Hospital Assn. v. McKenzie, 104 Me. 320; People v. Cogswell, 113 Cal. 129. (8) Item two of the fifth codicil, directing the trustees to care for the grave of Mr. Barnes and pay twenty-five dollars per month to William A. Barnes for life, does not defeat the charitable trust. Tiedeman on Real Property (3 Ed.) pars. 20, 203; Clark v. Brookfield, 81 Mo. 503; Jones v. Habersham, 107 U. S. 174; Piper v. Moulton,

72 Me. 155; Giles v. Fatherless, 10 Allen, 355; Drury v. Natick, 10 Allen, 183; Nourse v. Merriam, 8 Cush. 11; Hornberger v. Hornberger, 12 Heisk. (Tenn.) 635; In re Williams, 5 L. R. Ch. Div. 735; Fisk v. Attorney-General, 4 L. R. Eq. Cas. (1867) 521; Dawson v. Sinall, 18 L. R. Eq. Cas. 114; R. S. 1899, sec. 5216. (9) Appellants are not entitled to costs out of the trust fund if they are defeated in this case. R. S. 1899, sec. 63. (10) If the court shall find Mr. Barnes has created a charitable trust, then the appellants, not being either beneficiaries or trustees, are not proper parties to this action. Tyree v. Bingham, 100 Mo. 451; Lackland v. Walker, 151 Mo. 242; Woman's Christian Assn. v. Campbell, 147 Mo. 103; Academy v. Clemens, 50 Mo. 167; Barkley v. Donnelly, 112 Mo. 561; Chipman v. Montgomery, 63 N. Y. 221; Perry on Trusts, par. 744. (11) If appellants at any time had any cause of action for the property sued for, their claim has been barred by the seventeen years which have elapsed since the will of Mr. Barnes was proved, as shown by the record. R. S. 1899, secs. 4262, 4271, 4272, 4621 and 4624; Bank v. Bank, 107 Mo. 133; Harbey v. Donohoe, 97 Mo. 141; Kelly v. Hurt, 74 Mo. 561; Kline v. Vogel, 90 Mo. 239; Landrum v. Bank, 63 Mo. 480; Wells v. Perry, 62 Mo. 573; Reed v. Pointer, 145 Mo. 353.

KENNISH, J.—This suit in equity was instituted in the circuit court of the city of St. Louis on the 18th day of August, 1909, by the appellants, as heirs of Robert A. Barnes, deceased, against Samuel M. Kennard, Samuel Cupples and Murray Carleton, as trustees, under the last will and testament of the said Robert A. Barnes. One of the said heirs who did not join as plaintiff was made co-defendant.

By the provisions of the will of the said Robert A. Barnes certain bequests were made to said trustees for the purpose of erecting and maintaining a hospital

for sick and injured persons, and the purpose of this suit was to have such bequests adjudged invalid, the trustees divested of all title thereto and the title vested in the heirs of the said Robert A. Barnes, and for general relief. A demurrer to the petition was sustained and the plaintiffs declining to plead further, a final judgment was entered against them, from which they appealed to this court.

The full text of the will and six codicils thereto, all of which are of unusual length, are set forth in the petition. By the provisions of the will it appears that property of great value was therein disposed of and many bequests were made to charities, relatives and friends. This suit is concerned only with those provisions by which bequests are made for the erection and maintenance of a hospital for sick and injured persons, and for the endowment thereof. These provisions and the purposes thereof, together with the issues tendered thereon, are referred to and concisely stated in the following passages from plaintiffs' petition, namely:

"These plaintiffs further state that by items XVIII, XIX and XX of said original will; Item III of the first codicil thereto; Items VII, IX and X of the said third codicil thereto; Item II of the said fourth codicil thereto, and Items II, III, and VI of the said fifth codicil thereto, said testator, Robert A. Barnes, deceased, willed, devised and bequeathed to certain trustees therein named, certain definite and specific real and personal property, together with all the rest, residue and remainder of his estate, real or personal and of whatever kind, nature or description, not otherwise specifically bequeathed or devised, all of which will more fully appear in said items as hereinabove fully and at large set forth, in trust forever, to said trustees and their successors in the trust therein and thereby attempted to be created, for the following uses and purposes and none other, to-wit:

"1st.  To furnish a site for the purpose of erecting and maintaining thereon a hospital for sick and injured persons, without distinction of creed, under the auspices of the Methodist Episcopal Church, South, of the United States, or its successors, and under such rules and regulations as said trustees and their successors shall from time to time establish and maintain, to be forever called and known as the 'Barnes Hospital.'

"2d.  To erect and furnish the Barnes Hospital buildings upon the site above mentioned.

"3d.  As an endowment for the use and benefit of said Barnes Hospital hereinbefore provided for, for the support and maintenance of said hospital.

"4th.  To keep the lot of said testator, Robert A. Barnes, in Bellefontaine Cemetery, and all improvements thereon, in the best repair and condition forever.

"5th.  To pay to William A. Barnes, a cousin of the testator, the sum of twenty-five dollars per month during his lifetime.

"That plaintiffs are advised by counsel and believe that the said provisions contained in the said items last hereinabove specifically mentioned and referred to unlawfully suspend the absolute power of alienation of such portions of the estate as are herein embraced; and they therefore allege on information and belief that the said provisions are, and each of them is, illegal and invalid in law.

"That plaintiffs are advised by counsel and believe that all of said provisions of said will are indefinite and uncertain in their objects, purposes and subjects, invalid and unauthorized by law, and that they therefore allege on information and belief that said provisions are, and each of them is, illegal and invalid in law."

Item XVIII of the will, by which the testator sought to create the public charity in controversy, is as follows:

"I will and devise to Richard M. Scruggs, Samuel M. Kennard and Samuel Cupples, as trustees, and to their successors in this trust, as hereinafter provided for, either of the following described parcels of land, which they may select, situate in said city of St. Louis: first, a parcel of land in City Block Number 362, commencing at a point fifty feet east of North Twelfth Street, and on the north line of Madison Street, with a front running eastwardly from that point of one hundred feet and extending with that width northwardly to the depth of ninety-six feet and seventy feet to Clinton Alley, now called "Clifton Place;' second, a parcel of land in City Block Number 2366, having a front of one hundred feet on the west line of Elliott Avenue, and extending with that width westwardly along the north line of Montgomery Street to the depth of one hundred and twenty-seven feet and six inches; to have and to hold, subject to the conditions and limitations hereinafter provided, to said trustees and their successors forever, in trust for the purpose of erecting and maintaining thereon a hospital for sick and injured persons, without distinction of creed, under the auspices of the Methodist Episcopal Church South of the United States or its successor, and under such rules and regulations as said trustees and their successors, shall from time to time establish and maintain, to be forever called and known as the 'Barnes Hospital,' and I hereby will and direct that in case said trustees shall deem neither of the said parcels of land, last aforesaid described, eligible for a site for said hospital, then and in that case my executors are hereby empowered and directed to sell at private sale, at a price not less than the sum fixed by said trustees, and convey said parcels of land, and pay the proceeds thereof to said trustees with which and from the fund for this purpose in Item XVIII hereof provided, they shall purchase and acquire other real estate in the central portion of said city of St. Louis, as

a site for said hospital, which premises so acquired shall be held in trust by them and their successors forever, and used for the same purpose as the said parcel of land hereinbefore to them devised. This devise and bequest is made upon the condition and limitation that said real estate or any part thereof, so selected or purchased, as aforesaid, shall never be mortgaged or otherwise encumbered by said trustees or their successors.

"In case of the death, resignation or removal from said city of St. Louis, of any one of said trustees or of their successors in said trust, or of his failure to or his becoming incapacitated to act as such, from time to time, the Bishop presiding at the St. Louis Conference of the said Methodist Episcopal Church South or its successor, next preceding such death, resignation, removal, failure or becoming incapacitated, as aforesaid, shall appoint in writing, a successor in said trust, who by virtue of said appointment shall be vested with all the same rights, powers and duties as if he had been one of the said original trustees herein named.

"It is expressly provided that said trustees and their successors, or any of them, shall not receive or be paid any salary, reward or remuneration of any kind, for any work or labor done or services performed in or about their or his said office or position, for no one is fit for said position who would not act therein gratuitously. This provision is not deemed necessary as to the above named trustees, whom I know, but they may be important in regard to their successors.

"It is further expressly provided that said trustees and their successors, from time to time, shall annually, between the first and fifteenth days of January of each year, make and deliver to the said Bishop, presiding at the said conference aforesaid, next preceding said first day of January, and publish daily

234 Sup.—9

for one week in a prominent newspaper, published in said city, their report in writing, showing the state and condition of said hospital and its finances during the next last preceding year, the number of patients received and discharged, the income received and from what sources, the expenditures made and for what purposes, and the amount of the then present assets in their hands and in what they consist, and how invested, and where their funds are kept. And none of the moneys or funds to them at any time belonging, shall be deposited or kept in any bank, whose capital stock paid in, exclusive of surplus, is less than five hundred thousand dollars.''

In other parts of the will, relating to and making bequests for the proposed hospital, language is employed by the testator which discloses his deep solicitude and concern for the accomplishment in due time of that charitable purpose, but we do not deem it necessary to a proper understanding of the issues presented that these several provisions should be set forth in this statement.

Eleven separate points are stated in appellants' brief and a large number of authorities cited in support of each. In the printed argument the propositions relied upon are set forth in the following compact form, namely:

''1st. That the will of Robert A. Barnes under consideration creates a trust in perpetuity, such as can be upheld only in the case of a legal and valid public charity.

''2d. That said will is so lacking in designation of specific beneficiaries, and is so indefinite in its purposes and objects, that it cannot be upheld as a private trust, and is void, unless it is a legal and valid public charity.

''3d. That said trust, as created by said will, is not a legal and valid public charity.''

The correctness of the first two of the foregoing propositions is conceded by respondents and the sole remaining question is the third, which is more fully stated elsewhere in appellants' brief, as follows:

"The trust created by the will, so far as it relates to the founding of the hospital, is not a legal and valid public charity, and is therefore void."

Although the first two of the foregoing propositions are not controverted, it may be said with reference to them that the testator evidently sought and intended to create a public charity by the devises and bequests of Item XVIII of the will. That purpose plainly appears from these two provisions of the bequest: (1). The objects of the charity are indefinite, vague and uncertain. (2). The grant to the trustees is made in perpetuity. Both of these provisions are recognized as valid—the first as essential—in a public charity, while either of them would render invalid a devise or bequest intended as a private trust. Therefore, it is apparent that this bequest cannot be upheld as a private trust and that it must be upheld, if at all, as a public charity.

We are now to consider whether the bequest in Item XVIII of the will creates a valid public charity. In the determination of this question we are to deal with the subject in its legal sense; that is, a public charity recognized as such by the law and which may be enforced and the bequests therefor administered in accordance with the purpose and intention of the founder of the charity, under the jurisdiction and guidance of the equity powers of the courts.

Public charities, for the temporary and immediate relief from the consequences of public calamity or visitation, though of frequent occurrence and most commendable in those engaged therein, aid us but little in determining what is a public charity in the sense involved in this inquiry. Neither can we look for light from any legislative act or declaration of the law-

making body of this State, notwithstanding the fact that public charities, in the legal sense, are well recognized by our laws and many at the present time are in force and contribute in no small degree to the material well-being of our people. The question must be decided by resort to the common law of England, as built up and construed by the courts, and which by statute has been made a part of the law of this State.

Trusts for charitable uses, or public charities, as known at the present time, are of ancient origin and have long been recognized as a part of the common law. In England, courts of chancery exercised jurisdiction over them during the reign of Queen Elizabeth, in which, as appears from the records of such courts, many cases were brought for the purpose of enforcing compliance with the provisions of the trust in question in order that the bequest might be administered in accordance with the intention of the founder of the charity. [2 Perry on Trusts and Trustees (6 Ed.) 694.] In the forty-third year of the reign of that sovereign, and after the jurisdiction of courts of equity to enforce such trusts had become well established, what is known and referred to as the Statute of Charitable Uses, or the 43d Elizabeth C. 4, was enacted by Parliament, and that act has had a most important bearing upon the subject of public charities from that date until the present time. That statute, together with the common law of England upon the same subject, was made a part of the law of this State, and with the decisions of this court, now constitutes the law upon public charities by which we must be governed in the determination of this case.

In the preamble of the 43d Elizabeth C. 4, a number of classes of public charities are set forth as then existing and to which the act applied. As appellants contend that the bequest in controversy in this case cannot be upheld as a public charity unless it can be

shown to fall within some one or more of the classes thus enumerated, we shall set out the title and preamble of that act. They are as follows:

*"An Act to redress the mis-employment of lands, goods and stocks of money heretofore given to certain charitable uses.*

"Whereas Lands, Tenements, Rents, Annuities, Profits, Hereditaments, Goods, Chattels, Money and Stocks of Money, have been heretofore given, limited, appointed and assigned, as well by the Queen's most excellent Majesty, and her most noble Progenitors, as by sundry other well disposed Persons; some for Relief of aged, impotent and poor People, some for Maintenance of sick and maimed Soldiers and Mariners, Schools of Learning, Free Schools, and Scholars in Universities, some for Repair of Bridges, Ports, Havens, Causways, Churches, Sea-Banks and Highways, some for Education and Preferment of Orphans, some for or towards Relief, Stock or Maintenance for Houses of Correction, some for Marriage of poor Maids, some for Supportation, Aid and Help of young Tradesmen, Handicrafts—men and Persons decayed, and others for Relief or Redemption of Prisoners or Captives, and for Aid or Ease of any poor Inhabitants concerning Payments of Fifteens, setting out of Soldiers and other Taxes; which Lands, Tenements, Rents, Annuities, Profits, Hereditaments, Goods, Chattels, Money and Stocks of Money, nevertheless have not been employed according to the charitable Intent of the givers and Founders thereof, by reason of Frauds, Breaches of Trust, and Negligence in those that should pay, deliver and employ the same; For Redress and Remedy whereof, Be it enacted by Authority of this present Parliament," etc.

Referring to that statute as a part of the law of this State, appellants maintain the following:

"So it may be considered as settled that the Statute of Charitable Uses is in force in Missouri. And the question then arises whether the trust created by this will is a charity under that statute. In every State where this statute is considered in force, courts look to this statute for the purpose of ascertaining what uses are charitable and what are not."

There is no doubt as to the correctness of appellants' proposition that the Statute of Charitable Uses is in force in this State, but it is equally true that the common law of England upon the subject of such uses, as it existed at the time of and before the enactment of that statute, is also in force in this State. [R. S. 1909, sec. 8047; Chambers v. St. Louis, 29 Mo. 543; Missouri Historical Society v. Academy of Science, 94 Mo. 459; 2 Perry on Trusts and Trustees (6 Ed.), 694.]

In the case of Chambers v. City of St. Louis, supra, this court, speaking through Judge SCOTT, said: "Of late years the subject of charities has undergone a great deal of investigation, both in England and the United States; and the result of that investigation has strengthened the opinion that the law of charities did not derive its existence from the Statute of 43 Elizabeth, and that there was an inherent jurisdiction in the court of chancery over the subject of charities before the enactment of that statute. The opinion of the Supreme Court of the United States, in the case of the Philadelphia Baptist Association, in which a contrary doctrine was intimated, has not given satisfaction; and in subsequent cases, occurring in the State courts, it has not been followed. Judge STORY, speaking of that case in the subsequent one of Vidal v. Girard's Exrs., 2 How. 196, says: 'Very strong additional light has been thrown upon this subject by the recent publications of the commissioners on the public

records in England, which contain a very curious and interesting collection of the chancery records in the reign of Queen Elizabeth, and in the earlier reigns. Among these are found many cases in which the court of chancery entertained jurisdiction over charities long before the Statute of 43 Elizabeth; and some fifty of these cases, extracted from the printed calendars, have been laid before us. They establish in the most satisfactory and conclusive manner that cases of charities, where there were trustees appointed for general and indefinite charities, as well as for specific charities, were familiarly known to, and acted upon and enforced in, the court of chancery.' Whatever doubt, therefore, might be properly entertained on the subject when the case of the Trustees of the Philadelphia Baptist Association v. Exrs. of Hart, 4 Wheat. 1, was before the court (1819), these doubts are entirely removed by the late and more satisfactory sources of information to which we have alluded.''

And in the case of Mo. Hist. Society v. Academy of Science, supra, this court, discoursing upon the subject of what is a public charity under the law of this State, and the effect of the Statute of Elizabeth upon the subsequent jurisdiction of courts of equity over such charities, said: ''Any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity within the meaning of the authorities cited, and it is none the less a charity because not so denominated in the instrument which evidences the gift. And the validity of such charitable gifts is not at all dependent on the Statute of 43 Eli. c. 4, nor does the jurisdiction of courts of equity in such cases depend on that statute. The contrary view was at one time entertained by the Supreme Court of the United States (Baptist Association v. Hart, 4 Wheat. 1), but that

idea was reversed and thoroughly exploded in the Girard Will Case, 2 How. 127, which has since been followed.''

These cases are cited, and many of the same import could be added to show that the purpose of the Statute of Elizabeth was not constructive or definitive as to the law of charitable uses, but was intended solely to provide a new jurisdiction or legal machinery to correct existing abuses in such charities, for the reason,.as stated in the act, that the properties theretofore given to the charities therein named, ''as well, by the Queen's most excellent Majesty, and her most noble Progenitors, as by sundry other well disposed Persons . . . nevertheless have not been employed according to the charitable Intent of the givers and Founders thereof, by reason of Frauds, Breaches of Trust,'' etc.

Speaking of this statute and its effect, it has been said that, ''Since the passage of this statute, all the objects named therein are considered charitable. There are also many other uses, not named, and not within the strict letter of the statute, but which, coming within its spirit, equity and analogy, are considered charitable.'' [2 Perry on Trusts and Trustees (6 Ed.), sec. 692.] But this statute, even though remedial and not intended to establish a new standard as to what was a public charity, did enumerate the several classes of such charities for which the remedy was provided and, as there was no reason for omitting any from the benefits thereof, it must be conceded that it was intended to include the leading charities then known, and it has been said that one of the things accomplished by it was, ''It established an enumeration, or kind of definition, standard, or test, to which all gifts and grants in trust could be brought, in order to determine whether they were charitable.'' [2 Perry, supra, sec. 696.]

From the foregoing authorities it clearly appears that the statute cannot be looked to as the sole test of what is a public charity, but that "many other uses, not named, and not within the strict letter of the statute, but which, coming within its spirit, equity and analogy, are considered charitable." As supporting this view of the law, it may be noted that one of the more than fifty cases in which the courts of England had exercised chancery jurisdiction over public charities before that statute was enacted, is reported as follows: "Bill to compel defendant, who is feoffee in trust to make an estate in certain lands in Tottenham and Hornsey, to the hospital of St. Bartholomew, in West Smithfield, for the endowment of a chapel there; 'because great multitudes of Christian people of all parts of England and other nations, for sickness, poverty, and misery, continually of custom resort to the said hospital, and there relieved; and finally have their Christian sepulture round about the said chapel.'" [Wakering v. Bayle, Proceedings in Chancery, vol. 1. Cited in note on Vidal v. Girard's Executors, 43 U. S. 156.] It is evident from this report that the hospital there recognized as a public charity, was not limited to "aged, impotent and poor people," but that the sick were also the recipients of its bounty, though neither poor nor miserable.

The purpose of the devise and bequest in controversy is stated in the will to be "in trust for the purpose of erecting and maintaining thereon a hospital for sick and injured persons, without distinction of creed, under the auspices of the Methodist Episcopal Church South of the United States or its successor, and under such rules and regulations as said trustees and their successors, shall from time to time establish and maintain."

The position of appellants, in assailing the validity of the foregoing provision as creating a public charity, is stated as follows: "There is no restriction

of the benefits of this hospital to the poor, and it is the absence of any such restriction that precludes the conclusion that any charity is thereby created. This is the vital question in this case, Is a 'hospital for sick and injured persons' without any further designation or restriction, a charity in the sense of relieving the proof? . . . Both in England, where the Statute of Charitable Uses originated, and in those States of the Union where it has been followed, the rule is universal that, unless the gift or trust is for public educational purposes, public religious purposes, or works of public utility benefiting and open to the general public, it must be in some form or manner for the relief of poverty· . . . Charity, in the sense of receiving or benefiting individuals, is synonymous with charity in the popular meaning,—the relief of the poor.''

Under this contention, the poverty of the recipients of the charity is made an essential element of a valid public charity in all cases where the charity is to be bestowed upon individuals instead of upon the general public. This contention, even if we confine the definitions of public charities to such as are included in the Statute of Elizabeth, as insisted by appellants, is placing too restricted a construction upon the law, for, under the first class, ''aged, impotent and poor people,'' it is manifest that if the aged or impotent must be poor, in order to be proper objects of a public charity, then the words ''aged'' and ''impotent'' are meaningless and add nothing to the requirement of poverty. As to the subsequent classes, ''maintenance of sick and maimed soldiers and mariners,'' and ''aid and help to young tradesmen,'' it may also be said that if poverty be necessary to entitle them to bounty, they would have been comprehended within the words ''poor people,'' as used in the first class. We have not overlooked a few cases cited by appellants in support of their contention, but they are not in accord with

the spirit of the law in this State or with the current of authority upon the subject.

While poverty is the condition generally recognized in the bestowal of public charity upon individuals, it is not the only condition, as abundantly appears from the authorities. Indeed, it is not the fact of poverty alone which makes a person a proper object of charity, and this is shown by the existence of penal laws in England, along with the law of public charities, for the punishment of sturdy beggars. It is the need or want of food, clothing, shelter or other bodily ministrations, so commonly found among the poor, which prompts the exercise of public charity to that class. But a person who is sick, injured or afflicted, or in a helpless condition, is none the less a proper object to be included in the purpose of a public charity, although he may not be poor. This is the broad sense in which, in Hospital Association v. McKenzie, 104 Maine, 326, speaking of a hospital as a public charity, the court said: "It was to be open to all. The rich should not be turned away because of their wealth, nor the poor because of their poverty." And in which this court, in Mo. Hist. Society v. Academy of Science, supra, defined a public charity as, "Any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience." In 2 Perry on Trusts and Trustees (6 Ed.), sec. 687, that author includes in charitable trusts, "all gifts for the relief and comfort of the poor, the sick, and the afflicted." And at section 692, the same author continues: "Since the passage of this statute, all the objects named therein are considered charitable. There are also many other uses, not named, and not within the strict letter of the statute, but which, coming within its spirit, equity and analogy, are considered charitable." And in 6 Cyc:

902, public charities are defined as follows: "Charities are either public or private. Every public trust, though benefiting the rich and the poor alike, is a charitable trust, and those terms have the same meaning."

In accordance with the foregoing doctrine, public charities have been upheld in which the bequest was made to relieve "the great suffering, distress, famine and want caused by the destruction of life and property by storms, floods, fires and other accidental and natural causes." [Kronshage v. Varrell, 120 Wis. 161.] And where a bequest was to a life saving station. [Richardson v. Mullery, 200 Mass. 247.] And "to give shelter to homeless people at night, irrespective of creed, color or condition." [Croxall's Estate, 162 Pa. St. 579.] And for the purpose of establishing a fund and maintaining a hospital for the benefit of "infirm, afflicted, or unfortunate persons who are residents of said town of Pittsfield at any time, and who may be admitted into said hospital by the officers or authorities thereof for treatment; and also for all who may reside elsewhere, and who may be admitted therein for treatment." [Burbank v. Burbank, 152 Mass. 254.] And "for the purpose of founding and supporting, or uniting in the support of any institution that may be then founded, to furnish a retreat and home for disabled or aged and infirm and deserving American mechanics." [Hayes v. Pratt, 147 U. S. 557.] "For the maintenance of a free hospital in Biddeford, Maine, where the unfortunate may receive good care and skillful treatment." [Hospital Association v. McKenzie, 104 Maine, 320.]

From the foregoing cases it must be taken as settled that public charities for the relief of persons who are made objects of the charity for reasons other than their poverty, will be upheld.

The language of the case last cited, as to the purpose the trust, does not differ materially from that

of the bequest under consideration, and construing it, the court said: "The rich should not be turned away because of their wealth, nor the poor because of their poverty." And why is not that, as was the purpose of the testator in this case, the true spirit of public charity? It was said of old, "The poor always ye have with you;" and because of that truth, and the need, want and distress which closely wait upon poverty, the poor have always been, and ever will be, the chief concern of those who have means and are moved by the noble purpose of devoting it to the well-being of their fellow men. But sickness, pain and suffering are the heritage of all. We are continually attended by peril and may at any time, and when least expected, be stricken by misfortune and affliction. No man can be so rich or so circumstanced as to be exempt from this condition. And, if so overtaken, is charity to withhold its ministrations because the stricken sufferer may not be poor? Is the Samaritan to refuse to bind up the wounds of the unconscious man on the wayside because he may have means to pay a physician? Charity, whether public or private, sees the need, or want, or affliction, or suffering, and its first concern is to bring relief. The question of whether the recipient is able to pay is the merest incident and of minor importance. In the case under consideration, the ability of the sick or injured to pay may be regarded as almost an intrusion into the high charitable purpose of the benefactor, who would relieve "sick and injured persons, without distinction of creed." Such a gift and for such a purpose, aside from the aid of the liberal rule of construction applied by the courts in such cases, comes well within the language of this court in upholding as public charities, "gifts which are for the amelioration of the condition of mankind." Nor have counsel for appellants, with all of the ability, research and learning shown in their brief, called the attention of this court to a single case in which any court has

pronounced a bequest made for such a purpose invalid and insufficient to establish a public charity.

The testator. gave directions that the bequest should be "under the auspices of the Methodist Episcopal Church South of the United States or its successor, and under such rules and regulations as said trustees and their successors, shall from time to time establish and maintain." It was not necessary that the bequest should have been more definite as to the selection of the objects of the public charity, or for administering and carrying out the purposes of the gift, than it was made in this provision of the will. The sufficiency of the bequest in this regard, and the contention that the trustees are given such power as would authorize them to select the rich as patients and exclude the poor, are answered by the case of Chambers v. City of St. Louis, supra, in which the court, l. c. 589-590, said: "If, under such circumstances, the uncertainty of the persons to be relieved by a charitable fund could be available to destroy it, few charities could be sustained. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law for charitable uses different from that which governs all other trusts. The only difficulty in the way would be the law against perpetuities, and that would not exist where the donation in trust was made to a corporation. From the very nature of the subject, charitable gifts must be objects vague and uncertain. The subjects of the charity may be numerous and they are to be sought for and ascertained by those to whose discretion and judgment the dispensation of the relief is intrusted. The founder of a charity, by placing his fund in the hand of a competent trustee, designating the general object of the trust, with power to carry that object into effect, makes the trustee his substitute or delegate. Cannot any individual, who has the means,

employ them for the relief of 'poor emigrants and travelers coming to St. Louis on their way to settle in the West?' If he can carry out this charity himself, may he not appoint another to do it for him? Could it be objected to such a course that the trustee would not know how to act? As the donor of the bounty is willing to confide its management to the discretion of his agent, so long as that agent acts in good faith his acts are the acts of his principal, and there is no one but the principal to complain. If the agent abuses his trust, he, like all other fiduciary agents, is subject to the control of the courts."

The fact that bequests made for the payment of a sum to a relative of the testator monthly, and of another sum for the keeping of the burial lot of the donor in repair, were made charges upon a part of the fund bequeathed for the erection and maintenance of the hospital, is not important in its bearing upon the validity of the bequest. These bequests are not commingled with the purpose of the bequest for the hospital. They are merely charges upon the fund bequeathed to the trustees for the purpose of the principal charity and their only effect is to diminish the available funds to that extent.

We have examined carefully the bequest involved in this litigation, and the many authorities of this and other courts cited as to the law governing the subject of public charities, and we have arrived at the conclusion that the testator, by the provisions of his will, created a valid public charity under the laws of this State. The charity thus provided for is of such extent and of such possibilities for good among the people of the city where the testator lived, and where he directed it to be established, that there should be no unnecessary delay in bringing to the objects of his bounty and solicitude the blessings of his praiseworthy gift.

Entertaining the foregoing views, the judgment should be affirmed. It is so ordered. All concur, except *Valliant, C. J.,* absent.