————o————

IN THE MATTER OF LEOPOLD SCHMUCKER'S ESTATE *vs.* JOHN H. REEL, Executor, Appellant.

1. *Wills—Words of recommendation, when sufficient to create trusts.*—The prevailing doctrine is, that no particular form of expression is requisite in order to create a binding and valid trust, and words of recommendation, request, entreaty, wish or expectation will have that effect, provided the testator has pointed out with sufficient certainty both the subject matter and the object of the trust.

2. *Bequest incapable of execution by reason of indefiniteness—Property, investiture of.*—Where a bequest is for the purposes of benevolence or private charity, and is so general and undefined as to be incapable of execution by the court, it fails altogether, and the heir at law or next of kin becomes entitled to the property, as in cases of bequests void by the statute.

3. *Bequests for such purposes as the trustee may choose, effect of.*—Bequests for purposes of benevolence and general liberality, such as the trustee shall approve or direct, cannot be supported either as general trusts or for charitable uses.

4. *Devise for specific purpose explained to the executor, effect of.*—A devise by the testator for a specific purpose which he has explained to the executor, but which is not embodied in the will, is sufficient to vest a trust in the latter.

5. *Wills—Bequest for a purpose not embodied in the will, but declared to be explained to the devisee—Separate memorandum showing such purpose to be for masses, etc.—Mortmain—Secret trust—Constitution.*—A will contained the following provision : "I give and bequeath to A. B. five hundred dollars, to be applied to a specific charitable purpose which he will understand," etc., etc. It appeared that A. B. had theretofore received this written memorandum: "After I am dead I would like you, if you please, to bestow, to be equally di-

Schmucker's Estate v. Reel.

vided among the German Roman Catholic churches of St. Louis, for masses for myself and wife, five hundred dollars." It also appeared that mass could be said only by a priest; that a priest was one who ministered at the altar, and that the pecuniary acknowledgment for saying the mass was applied to the support and benefit of the priest saying it. *Held*, that under such proof, a priest was a "minister" within the meaning of the constitution of 1865 (Art. I, § 13), and that the devise, taken in connection with the memorandum, being for his "benefit," was a secret trust made in evasion of that section, and in fraud of its prohibitions.

6. *Bequest, failure of for uncertainty of purpose.*—A bequest to be applied in charity, according to the best discretion of the devisee, will fail for uncertainty of purpose.

7. *Trusts—Legatee may take beneficial interest, notwithstanding vagueness, when.*—A trust may be so vague and indefinite as to be ineffectual as a trust. And yet, if it clearly appear that a trust was intended, the legatee may take a beneficial interest.

### *Appeal from St. Louis Circuit Court.*

*Bakewell & Farish* for Executor.

I. This is an absolute bequest to John Reel. He can do as he pleases with the money. The expressions of the purposes of the gift are merely descriptive of the motive of the testator. (Redf. Wills, 712, 713, and notes.)

II. The word "minister" is always applied to a Protestant minister, never to a Catholic priest. The peculiar function of a Catholic priest is to say mass. Nothing is said in the constitution about priests, or bequests or gifts to priests, or for masses.

Where the meaning of the constitutional clause is doubtful, the exercise of a private right alleged to conflict with it, must be held valid. (F. & M. Bk. vs. Smith, 3 Serg. & Rawle, pp. 63–73.)

III. The legacy is not void for uncertainty. (Gloucester vs. Wood, 3 Hare, 131, and cases cited; Legge vs. Argill, 1 T. & Russ., 265, and note; Gibbs vs. Rumsey, 2 Ves. & Beam., 244; Att'y Gen'l vs. Herrick, Ambler, 712; Acc'd Visitation vs. Clemens, 50 Mo., 167; Magridge vs. Thackwell 2 Ves. Ch., 84; Cook vs. Duckenfield, 2 McKyns, 562.)

*E. C. Kehr*, for Respondent.

I. The trusts attempted to be created by the will being so vague and uncertain that the *cestui que* trusts cannot be definitely and accurately determined, the bequests must fail. (2 Redf. §§ 2, 4, 5, p. 409, 410; 2 Id., 781–2; Id., . Eq.. § 979*a; Fontaine vs. Ravenal, 17 Vesey vs. Jameson, 1 Sims & S.. 69; Morice... ham, 9 Ves., 399; 10 Ves.. 522; James vs. . ., 17; Mayor of Gloucester vs. Wood, 3 Hare. 1... ed in 1 H. L. Ca., 272; Briggs vs. Penny. 3 DeG. & Sm., ⸝25; 2 Redf. Wills. 2 ed.,k., p. 426; Wheeler vs. Smith, 9 How. (U. S.) 55–80; Norris vs.Thompson's Ex'r, 4 C. E. Green [N. J.] ——; Fowler vs. Garlike, 1 Russ. & My., 232.)

II. The bequests cannot be upheld as charitable trusts, because: 1st. As the purposes of the trusts are not designated in the will it cannot be determined whether they are in fact charitable or not. (Mayor of Gloucester vs. Wood, *supra;* Briggs vs. Penny, *supra*.) 2d. On the contrary the clause of the will which directs that the receipt of the archbishop, or of the person in charge of the religious institutions named, shall be a discharge to the trustee, negatives any general charitable intention on the part of the testator; but, 3d. If made to evade the law the true character of the bequests may be proved *aliunde*. (2 Redf. Wills, 787, and note; Id., 2 ed., § 30, p. 511, and cases cited in note 79; Id., 3 ed., § 4, p. 511: Strickland vs. Aldridge, 9 Ves., 516; Tudor Char. Tr.. 88.)

III. It appears from the testator's secret instructions to Reel, that the bequests are to be bestowed for masses for the testator and his wife after death. They do not therefore constitute charitable uses. (2 Redf., 2 ed.. § 5. p. 496–7, and authorities cited; Id., § 40, p. 517: Tud. Char. Us., p. 26, and authorities cited; Sto. Eq. Jur., § 1182; West vs. Shuttleworth, 2 My. & K., 684; Attorney General vs. Hurst, 2 Cox. 364; Corbyn vs. French, 4 Ves., 419–33; DeThemmines vs. DeBonneval, 5 Russ., 288; Heath vs. Chapman, 2

Drew, 417.) Bequests to be given in private charity are not public charities, and cannot be administered by the courts of equity as such, and being void as trusts, on account of their indefiniteness, will go to the next of kin. (2 Redf., 779; Id., 2 ed., § 16, p. 504.) To be protected as a charitable trust, the bequest must be exclusively charitable. (2 Redf., 830; Sto. Eq. Jur., § 1154, d; Norris vs. Thomsen, 4 C. E. Green, 307.)

IV. The bequests in Schmucker's will are in evasion and contravention of § 13 of Art. I. of the Constitution of Missouri. (Wagn. Stat., 36.) And the evasion of and fraud upon the constitutional provision may be shown, and being shown, vitiate the bequests. (Tud. Char. Tr., 88, citing: Boston vs. Statham, 1 Ed., 508; Edwards vs. Pike, 1 Ed., 267; Mackleston vs. Brown, 6 Ves., 52; Strickland vs. Aldridge, 9 Ves., 516; Pilkington vs. Boughey, 12 Sim., 114.)

WAGNER, Judge, delivered the opinion of the court.

The exceptions in this case arise wholly out of the ruling of the court below in holding certain provisions in the will of Leopold Schmucker void. The following are the portions of the will thus held to be void, and which now form the subject of controversy:

1st. "I give and bequeath to John H. Reel two hundred dollars, to be applied to a specific purpose which I have explained to him.

2d. I give and bequeath to John H. Reel the further sum of five hundred dollars for another and specific charitable purpose which he well understands.

3d. The balance of my property of every description, I give, devise and bequeath to John H. Reel, to apply in charity, according to his best discretion, and I appoint said John H. Reel executor of this, my will."

The will then continues: "And whereas I hope, that Mr. Reel aforenamed will consent to act as my executor, and desire to save him all trouble and annoyance in that regard, and have every confidence, good faith and discretion, and

have explained to him to what charities I desire him to appropriate the monies herein bequeathed to him, it is my will that my said executor be held to no accountability whatever for the non-performance or ill-performance of the trust herein confided to him; he will use his best discretion in the matter, and the receipt of the acting Archbishop of St. Louis of the Roman Catholic church in Missouri or Kansas, shall be a full discharge to him *pro tanto* for any monies applied by him to charities according to my request."

To invalidate the will and sustain the judgment of the lower court, it is insisted, first, that the trusts attempted to be made are so vague and uncertain as to render them incapable of being carried into effect according to law; and, second, that the attempted bequests are in violation of the constitution of this State and void.

On the other hand it is contended that the bequests to the executor vested him with the absolute title to the property, and that the words of the testator expressing a desire that he should use it in a certain way, have no binding force.

Courts of equity have frequently discussed the question as to the force of words or expressions of recommendation in wills in regard to the use to which the testators might desire the persons to whom they had given legacies to put the same. The prevailing doctrine is, that no particular form of expression is requisite in order to create a binding and valid trust; and that words of recommendation, request, entreaty, wish or expectation, will impose a binding duty upon the devisee by way of trust, provided the testator has pointed out with sufficient clearness and certainty both the subject matter and the object of the trust. (Reeves vs. Baker, 18 Beav., 372; Macnab vs. Whitbrad, 17 Beav., 299; Jarm. Wills, 336; 2 Redf. Wills, 2 ed., 410.)

Where a bequest is for a purpose of liberality or benevolence, or private charity, and is of a nature so general and undefined as to be incapable of being executed by the court, it fails altogether, and the heir at law or the next of kin, as the case may be, becomes entitled to the property, as in cases of

bequests void by the statute. (Morice vs. Bishop of Durham, 9 Ves., 399 ; S. C., 10 Ves., 521 ; Ommanney vs. Butcher, 1 Turn. & Russ., 260 ; Ellis vs. Sebby, 1 My. & Craig, 286 ; Fowler vs. Garlike, 1 Russ. & M., 232; 2 William's Ex'rs, 2 Am. ed., 787.)

Bequests for purposes of benevolence and general liberality, such as the trustee shall approve or direct, cannot be supported either as general trusts or for charitable uses. In Morice vs. Bishop of Durham (9 Ves., 399) Sir William Grant, M. R., in discussing the different trusts and the principles of law applicable to them, lays down the following propositions : First, If property is given to one with a mere recommendation that he apply a portion of the income.in a particular mode, intending to leave it optional with the donee, the gift is absolute; Second, If the donee is a mere trustee to carry into effect the purposes of the testator in regard to certain persons intended to be benefited, but not sufficiently identified in the will, the property is undisposed of, and courts of equity will not attempt to carry those purposes into effect by conjecture merely, but will regard the property as belonging to the heir, or the next of kin, as the case may be.

Now it is sufficiently apparent here that this will cannot be brought within the first of the propositions above laid down. The testator did not intend to leave it optional with the devisee or executor, as to whether he would apply the bequests or not. He first gives and bequeaths two hundred dollars to be applied to a specific purpose which he had explained to the donee. There is no mere recommendation that the application should be made if the executor saw proper to act at his will and discretion ; but the bequest is made for a defined object, a specific purpose which the testator had explained, but which he did not see fit to embody in the will. The same remarks are equally applicable to the second bequest of five hundred dollars. That amount is also given for another specific charitable purpose, which the executor or donee well understood. The residuum is then devised and bequeathed to the executor to apply in charity, according to his best dis-

cretion; but this is immediately explained in the succeeding clause, in which the testator says that he has every confidence in the good faith and discretion of the executor, and that he has explained to him in what charities he desired him to appropriate the moneys, and that the receipt of the acting Archbishop of St. Louis of the Roman Catholic church, or of the person or persons in charge of any religious or charitable institution of the Roman Catholic church in Missouri or Kansas, should be a full discharge for any monies applied by the executor according to the testator's request.

There is no mistaking the purport of this language. It all goes to show that the executor took bequests clothed with a trust to carry out certain objects or purposes not defined or expressed in the will.

In the case of Briggs vs. Penny (3 DeGex & Sm., 525) the proceeding was commenced by the next of kin of Frances Harley, the testatrix, claiming the residuary portion of her estate, and the executrix, Sarah Penny, claimed that she was entitled to it absolutely under the will. In Frances Harley's will was the following bequest: "To Sarah Penny of Great James Street, Bedford Row, £3000, and a like sum of £3000 in addition, for the trouble she will have in acting as my executrix." Then follows this clause: "And lastly, as to all the rest, residue and remainder of my personal estate and effects subject to and chargeable with the aforesaid legacies and annuities, save and except such of them as are of a charitable nature, which I exclusively charge upon such part of the said personal estate as by law I am empowered to charge therewith, and not out of any part of my lands, tenements or hereditaments, I give and bequeath the same unto the said Sarah Penny of Great James Street, Bedford Row, her executors, administrators and assigns, well knowing that she will make a good use, and dispose of it in a manner in accordance with my views and wishes."

After the testatrix's death, among her papers some writings were found denoting several charitable as well as other gifts, which the testatrix desired should be made. One of

these was headed, "My Wishes." The defendant contended that the testatrix intended her, as the residuary legatee, to take the residue beneficially; but the court overruled her defense, and held that there was no sufficient expression that the executrix should take the residue beneficially, and that she therefore held it in trust for the next of kin.

The vice Chancellor ruled out the papers expressing the testatrix's wishes which were made after the will was executed, and which, it did not appear, was ever communicated to the executrix previous to the making of the will, on the ground that they were contrary to the will's act. He then decided that the will on its face showed that the residuary portion of the estate was not to go to and vest in the executrix as legatee; that the expressions, "giving and bequeathing the residue to the defendant, her executors, administrators and assigns," well knowing that she would make a good use, and dispose of it in a manner in accordance with "testatrix's views and wishes" show clearly that a trust was intended, and that, as the trust was not expressed in, and could not be gathered from the will, it was incapable of being carried out and consequently it fell, and the estate descended to the next of kin.

This case was afterwards appealed and came before the Lord Chancellor for decision, where after thorough consideration, the decree of the vice Chancellor was affirmed. (Briggs vs. Penny, 3 Mac. & G., 546.) The chancellor held that the clause in the will by which the testatrix bequeathed all her residuary personal estate to the executrix, well knowing that she would make a good use, and dispose of it in a manner in accordance with testatrix's views and wishes, did not give the residue to the executrix for her benefit; but that the words of the bequest created a trust. The doctrine was announced that words accompanying a gift or bequest, expressive of confidence or belief or desire or hope that a particular application will be made of such bequest, will be deemed to import a trust upon these conditions, 1st, that they are so used as to exclude all option or discretion in the party who is to act, as

to his acting according to them or not; 2d, the subject matter must be certain; and 3d, the objects expressed must not be too vague or indefinite to be enforced. Vagueness in the object will unquestionably furnish reason that no trust was intended, yet this may be countervailed by other considerations, which show that a trust was intended; while at the same time such trust is not sufficiently certain and definite to be valid and effectual. It is not necessary, to exclude the legatee from a beneficial interest, that there should be a valid or effectual trust; it is only necessary that it should clearly appear that a trust was intended. In every will creating legacies or trusts, there should be such certainty as will enable the court to carry them out. Where such uncertainty exists that the court cannot see what object the testator had in view, or for what he intended to provide, then the legacy or trust must fail.

This is well illustrated by the case of the Corporation of Gloucester vs. Osborn (1 H. L. Cas., 272). There a testator gave to his executors beneficially, in equal proportions, all his property which he might not dispose of, subject to his debts, and any bequests which he might afterwards make. He afterwards made a codicil in these words, "In a codicil to my will, I gave to the corporation of Gloucester £140,000; in this I wish my executors would give £60,000 more to them for the same purpose as I have before named." No other codicil was produced, and there was nothing to show for what purpose the legacies were given. The corporation of Gloucester filed a bill claiming the two legacies, but the court of chancery decreed against them, and the decree was affirmed in the House of Lords, where it was held that the purpose of both legacies should be regarded as being the same, and that both failed for uncertainty of purpose.

This case might very well rest here, as we have seen that a trust was created by the terms of the will, and the trust is wholly incapable of enforcement on account of vagueness and uncertainty. But in the court below, the second point was also passed upon, and it has been argued here by counsel;

and without giving any opinion as to whether, under the circumstances, the memorandum was admissible in evidence, we will proceed to consider it, because there is another case now pending in this court, involving essentially the same question, and its discussion may be conveniently made here. The uses for which the trusts were designed, and with which the testator says his executor was well advised and acquainted, were contained in written memoranda given by the testator, to the executor before the will was drawn. They were written for the purpose of drawing the will by, but the executor fearing it would not be good, if they were included in it, procured the services of an attorney who altered the will to its present shape, leaving the provisions out, but intending them as a secret trust. The following is the writing addressed to the executor : " Mr. John Reel—After I am dead, I would like you, if you please, to bestow the money I bequeathed you as follows : 1st. To the Benedictines of Atchison, Kansas, for a memorial mass for 100 years for myself and wife, $200. 2d. To be equally divided among the German Roman Catholic churches of St. Louis, for masses for myself and wife, $500. 3. The balance for masses for myself and wife."

When this will was made our constitution declared, " that every gift, sale or devise of land to any minister, public teacher or preacher of the gospel, as such, or to any religious sect, order or denomination, or to or for the support, use or benefit of or in any trust for any minister, public teacher, or preacher of the gospel, as such, or any religious sect, order or denomination ; and every gift or sale of goods or chattels, to go in succession, or to take place after the death of the seller or donor, to, or for such support, use or benefit ; and also, every devise of goods or chattels to, or for the support, use or benefit of any minister, public teacher, or preacher of the gospel, as such, or any religious sect, order, or denomination, shall be void."

The will here was obviously made to evade the above provision in the constitution. The executor took memoranda of the testator's intentions, and they are the same that were subsequently embodied in the secret instructions.

The memoranda were submitted to counsel, the form of the contemplated bequests were changed, but their substance was retained, and a charitable purpose was simulated to evade the constitutional prohibition.

The secret instructions, delivered contemporaneously, reveal the intentions of the testator, and stamp the character of the gift. According to the evidence submitted on the trial, mass can be said only by a priest, and a priest is one who ministers at the altar, and the pecuniary acknowledgment for saying the mass is applied to the support and benefit of the priest saying it. Therefore, if the bequests are carried out and applied to masses, they will be paid over to the priest or priests, saying the masses, for the support and benefit of such priest or priests. As a priest is one who ministers at the altar, he comes within the definition of the constitutional provision.

Courts of equity have always exercised their jurisdiction in setting aside all transactions or agreements of parties, made in fraud of the policy or to evade the prohibitions of law. Thus, Judge Story says, that if a devise is made upon a secret trust for charity in evasion of the statute of Mortmain, it will be set aside. (Sto. Eq. Jur., 297.) The question has come up in England where parties by secret trusts have sought to carry out their purposes in a manner prohibited by the statute of Mortmain. But the courts have always held these attempted evasions absolutely void. In the case of Edwards vs. Pike, (1 Eden, 267) the testatrix was desirous of devising certain of her property for a particular use, but being apprehensive that it would be void in consequence of the statute of mortmain, she devised the same to her two neices, and informed them of that fact, and had read to them a memorandum, stating what her intentions were, and entreated them to promise her that they would dispose of the property according to her wishes. The court held that this was an elusory disposition, in order to evade the statute, and the devise was declared to be void. So in Boson vs. Statham (Id., 508), the bill declared that the devise was upon a secret trust,

made with intent to elude the statute, and such appearing to be the fact, was set aside. The adjudications upon the statute are uniform and harmonious, and the rule is settled, that where there is a devise to persons and their heirs, and there is a secret understanding between the devisees and the testator, that they will hold the land upon trust for a charity, the devise will be void. as being in fraud of the statute, and the devisees, upon a bill being filed, will be compelled to answer as to the secret trust. (Tud. Char. Tr., 88; Muckleston vs. Brown, 6 Vesey, 52; Strickland vs. Aldridge, 9 Id., 516; Pilkington vs. Boughey, 12 Sim., 114.)

The principle could not be otherwise. No court can permit a party to do indirectly what he is prohibited from doing directly. Whenever it is ascertained that a thing is done for the purpose of eluding a statute, or evading the prohibitions of a law, there is but one course to pursue, and that is, to declare the transaction void. It follows, therefore, that the judgment of the circuit court must be affirmed; 1st, because the will, by its bequests, gave the property to the executor in trust for certain purposes, and those purposes are not defined so that a court can carry them out; and, 2d, because if we look at the written wishes of the testator to ascertain what the trusts were, we find that they are prohibited by the constitution.

Judgment affirmed. All the other judges concur, except Judge Vories, who is absent.