GOSSETT et al. v. SWINNEY et al.

No. 9200.

Circuit Court of Appeals, Eighth Circuit.

Nov. 13, 1931.

Rehearing Denied Dec. 19, 1931.

See, also (D. C.) 45 F.(2d) 890.

A. N. Gossett, of Kansas City, Mo. (William Seward Allen, of New York City, and John T. Harding, Henry L. Jost, Ben R. Estill, Arthur L. Miller, Roy K. Dietrich, Frank E. Tyler, Claude S. Gossett, and Lucian Lane, all of Kansas City, Mo., on the brief), for appellants.

Paul R. Stinson, of Kansas City, Mo. (I. P. Ryland, Arthur Mag, Roy B. Thomson, Alfred M. Seddon, McCune, Caldwell & Downing, R. R. Brewster, Harkless & Histed, Winger, Reeder, Barker, Gumbiner & Hazard, Madden, Freeman & Madden, William S. Hogsett, Langworthy, Spencer & Terrell, Scarritt, Jones & North, and Alfred Gregory, all of Kansas City, Mo., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge.

December 20, 1927, Harry Wilson Loose, a citizen of Kansas City, Mo., died leaving a will, the construction of article seven whereof is the subject-matter of this controversy. He left no descendants, brothers or sisters, nephews or nieces. His father and mother as well as his uncles and aunts were dead. His next of kin, and indeed his only blood relatives, were the ten first cousins,

complainants in this action. Upon his wife, from whom he had been living apart, and who survived him, he had made a property settlement, which she had accepted in satisfaction of all her marital rights or claims upon his estate. Included in this settlement was the provision that she should receive the sum of $100,000 from his estate if she survived him. By the will, this sum was bequeathed to her and has been paid by the executors. None of the plaintiffs was named as beneficiary. The will contained three bequests in addition to that to the wife above mentioned. By article seven of the will, the remainder of his estate was devised and bequeathed to the First National Bank of Kansas City, Mo., Edward F. Swinney and Arthur Mag as trustees, for the following purposes:

"(b) The Trustees shall take possession, control and management of all of the property devised and bequeathed in this Article Seven to the Trustee, said property being sometimes hereinafter referred to as the trust estate. The Trustees shall invest, reinvest the same, collect and receive the rents, issues and profits thereof, and from time to time use and apply the principal and income of said trust estate for the furtherance and development of such charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research purpose in Kansas City, Missouri, as said Trustees shall in their absolute discretion determine to be in the public interest. Such application may be made either by donations to institutions of the character above mentioned or through the formation of corporations or associations for the development of such purposes and contributions to such corporations or associations."

Said article seven also contained the following paragraphs:

"(g) Each institution which shall receive any of the benefits from the trust created under this Will shall place in one of its buildings a bronze tablet of such design as it deems appropriate, on which shall be substantially the following words:

" 'This Institution is Partly Endowed by
The Carrie J. Loose Fund
Established by Her Son,
Harry Wilson Loose.' "

"It is my recommendation that each of such institutions consult with my attorney, Arthur Mag, of Kansas City, Missouri, in connection with the exact location of said bronze tablet or tablets and the inscription thereof. I recommend to the Trustees (but this shall merely be construed as a recommendation and nothing else, the final decision being in their absolute discretion) that, in using and applying the principal and income of the trust estate as hereinbefore provided, they show every possible preference to The Women's Christian Association of Kansas City, Missouri, which operates the Gillis Orphans' Home and the Margaret Klock Armour Memorial Home for Aged Couples. I likewise recommend that they give every consideration to the Children's Mercy Hospital of Kansas City, Missouri, and the George H. Nettleton Home for Aged Women.

"(h) If possible, I would recommend that the Trustees be members of the Governing Boards of the various institutions for whose benefit the income and principal of the trust estate may be from time to time used and applied, but this shall not be construed as a condition.

"(i) No Trustee named in this Will and no trustee appointed to fill any vacancy as herein provided shall be disqualified from acting or be subject to any criticism whatsoever by reason of being an officer or member of the Governing Board of any institution to which the said Trustees shall deem it desirable to extend aid under the powers hereinabove conferred upon them."

This suit was commenced by the filing of a bill of complaint by Charles M. Irwin, first cousin of the testator, against Edward F. Swinney and Arthur Mag as executors, and First National Bank of Kansas City, Mo., Edward F. Swinney and Arthur Mag, as trustees under the will of said decedent. By subsequent amendments, Isaac A. Loose, Edith Loose Wood, Amanda Loose Eastman, Mary B. Merrill, Paul Brown, Silas S. Brown, Joseph L. Brown, Kenneth D. Loose, and Jessie Loose Smith, also first cousins, have been added as complainants. By intervention, the Attorney General of the state has been made a defendant. All of the complainants are citizens and residents of states other than Missouri, and all of the defendants are citizens and residents of Missouri. Federal jurisdiction attaches by reason of this diversity of citizenship. Each of the complainants had been remembered by substantial bequests in the will of the testator's father, Joseph L. Loose, and in that of his uncle, Jacob L. Loose. Since the filing of the complaint herein, the original complainant, Charles M. Irwin, has died intestate, and the suit has been revived in the

name of A. N. Gossett, the duly appointed administrator of his estate.

The substance of the contentions of appellants in attacking article seven of the will are:

"1. The attempted trust is void for vagueness, indefiniteness and uncertainty in that,—

"(a) The ten purposes expressed in his will by the testator are so broad and general that the testator has failed himself to designate any charitable use or uses in the legal acceptation of the term to which the funds must be devoted; and he states ten general purposes, undertaking to leave to the absolute discretion, will or determination of the trustees the choice between the ten.

"(b) The testator has failed to designate a class or classes of beneficiaries from which the ultimate individual recipients of the trust funds may be selected.

"2. The attempted trust is invalid because some of the ten words used by testator to designate the ten purposes or uses are not charitable at all in meaning or connotation, and the others extend far beyond charity in the legal sense."

At the trial of the case below, the court, in an exhaustive opinion, found the issues for appellees, and decreed accordingly. Irwin et al. v. Swinney (D. C.) 44 F.(2d) 172. It is conceded that the validity of this bequest depends upon the law of Missouri, the state of the testator's domicile. Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Duggan v. Slocum (C. C. A. 2) 92 F. 806. The courts of Missouri, as well as most American courts, have adopted a liberal attitude toward charitable trusts. [1, 2] In approaching a question of this character, we should keep in view two cardinal rules which govern in the construction of wills. The first is that every effort should be made to ascertain and fulfill the intention of the testator; and, second, that charitable devises are favorites of the law and should be upheld, provided they are sufficiently definite to permit of enforcement in a court of equity, and are not in conflict with existing law. St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S.W.(2d) 47; In re Rahn's Estate, 316 Mo. 492, 291 S. W. 120, 51 A. L. R. 877; Mott v. Morris, 249 Mo. 137, 147, 155 S. W. 434; Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093; Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369; Lackland et al. v. Walker, 151 Mo. 210, 52 S. W. 414; Adams

v. University Hospital, 122 Mo. App. 675, 685, 99 S. W. 453.

In St. Louis Union Trust Company v. Little, 320 Mo. 1058, 10 S.W.(2d) 47, it is said:

"It is not the law that where the meaning of any portion of a will is uncertain and ambiguous, the whole will is void by reason of such uncertainty and ambiguity. On the contrary, no will will be held to be void for uncertainty unless it is impossible to put a meaning upon it.

"It matters not what words were used by the testator to express his intention, or in what peculiar or technical language he expressed it, courts will give effect to his intention as it may be gathered from the entire will."

The language found on page 454 of Jarman on Wills (6th Ed.) taken from an English case, is thus quoted with approval: "The modern doctrine is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as was said in one case, to repose on the easy pillow of saying that the whole is void for uncertainty."

And, again: "The duty of the court in every case is to get at the intention of the testator, and our statute has given emphatic repetition to this rule. (Sec. 555, R. S. 1919). The general trend of Missouri cases fully supports this doctrine. (Grace v. Perry, 197 Mo. 559 [95 S. W. 875, 7 Ann. Cas. 948]; Gannon v. Pauk, 200 Mo. loc. cit. 85 [98 S. W. 471]). It matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the court will give effect to his intention as it may be gathered from the entire instrument. (Cross v. Hoch, 149 Mo. 325 [50 S. W. 786])."

It is the position of appellees that the language used in article seven of the will imports a devise essentially charitable, and manifests an overriding charitable intent; that this appears both from the will as a whole and from the surrounding facts and circumstances; that such intent, once established, will control, even over the literal meaning of words and phrases.

In Board of Trustees v. May, 201 Mo. loc. cit. 369, 99 S. W. 1093, 1094, much relied upon by appellants, Judge Graves said: "Wills should be so construed as to carry

out the intention of the parties. In the latter we are not limited to the four corners of the instrument, but may be enlightened by evidence, aliunde, as to the conditions and surroundings of the testator, in determining the real intention of the party making the will."

In this connection it should be observed that the English Statute of Charitable Uses (43 Elizabeth, Ch. 4) is a part of the common law of Missouri. St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S.W.(2d) 47; Harger v. Barrett, 319 Mo. 633, 5 S.W. (2d) 1100; Dickey v. Volker, 321 Mo. 235, 255, 11 S.W.(2d) 278, 62 A. L. R. 858; Musser v. Musser, 281 Mo. 649, 660, 221 S. W. 46; Buchanan v. Kennard, 234 Mo. 117, 132, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50; Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369; Chambers v. City of St. Louis, 29 Mo. 543.

The classes of charitable trusts set out in this statute are the following: "Some for Relief of aged, impotent and poor People, some for Maintenance of sick and maimed Soldiers and Mariners, Schools of Learning, Free Schools, and Scholars in Universities, some for Repair of Bridges, Ports, Havens, Causeways, Churches, Sea-Banks and Highways, for Education and Preferment of Orphans, some for or towards Relief, Stock or Maintenance for Houses of Correction, some for marriage of poor Maids, some for Supportation, Aid and Help of young Tradesmen, Handicrafts-men and Persons decayed, and others for Relief or Redemption of Prisoners or Captives, and for Aid or Ease of any poor inhabitants concerning Payments of Fifteens, setting out of Soldiers and other Taxes."

It is conceded that this Statute of Elizabeth was not intended to include all objects of a charitable nature. It did enumerate various classes then recognized as legitimate objects of charity, and this classification has been carried forward into the law of Missouri.

In Buchanan v. Kennard, supra, loc. cit. 132 of 234 Mo., 136 S. W. 415, 418, the Supreme Court of Missouri said: "That statute, together with the common law of England upon the same subject, was made a part of the law of this state, and with the decisions of this court now constitutes the law upon public charities by which we must be governed in the determination of this case."

It then quotes approvingly from 2 Perry on Trusts and Trustees (6th Ed.) § 692,

as follows: "Since the passage of this statute all the objects named therein are considered charitable. There are also many other uses, not named, and not within the strict letter of the statute, but which, coming within its spirit, equity, and analogy, are considered charitable."

And, finally, in St. Louis Union Trust Company v. Little, supra, loc. cit. 1069 of 220 Mo., 10 S.W.(2d) 47, 50, the same court said: "As there are some states in which the statute of 43 Elizabeth, respecting charitable uses, has been repealed, we do not consider that the opinions of the courts of those states, nor of other courts in the subject of the law of charities prevailing in them, should have any great influence in our judgment in relation to this matter."

Perhaps charity, as generally and commonly understood, has to do with gifts to the poor and needy, and steps taken to relieve distress and suffering on the part of those unable to help themselves; but the legal significance of the term is much broader. Public charities are thus defined: "Every public trust, though benefiting the rich and the poor alike, is a charitable trust." 6 Cyc. 902.

See, also, Buchanan v. Kennard, 234 Mo. loc. cit. 139, 140, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D, 50; Catron v. Scarritt Collegiate Institute, 264 Mo. 713, 726, 175 S. W. 571; Jones v. Williams, Amb. 652, approved in Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369, and in Perin et al. v. Carey et al., 24 How. 465, 16 L. Ed. 701; Newton v. Newton Burial Park (Mo. Sup.) 34 S.W.(2d) 118, 120, 121; Lackland v. Walker, 151 Mo. 210, 52 S. W. 414; Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450; Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Schell v. Leander Clark College (D. C.) 10 F.(2d) 542.

In the consideration of charitable devises, a number of definitions have been announced, some by the Supreme Court of Missouri itself, and some in other jurisdictions, which have been adopted and quoted with approval by that court. Among the former is included that of Judge Sherwood in Missouri Historical Society v. Academy of Science, 94 Mo. 459, 8 S. W. 346, 348: "Any gift not inconsistent with existing laws, which is promotive of science, or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity, within the meaning of

the authorities cited, and it is none the less a charity because not so denominated in the instrument which evidences the gift."

This statement was quoted and approved in Crow ex rel. v. Clay County, supra, loc. cit. 260 of 196 Mo., 95 S. W. 369, and in Buchanan v. Kennard, supra, loc. cit. 135 of 234 Mo., 136 S. W. 415.

In State v. Academy of Science, 13 Mo. App. 213, 216, we find the following: "A gift designed to promote the public good by the encouragement of learning, science, and the useful arts, without any particular reference to the poor, and any gift for a beneficial public purpose not contrary to any declared policy of the law, is a charity. And, if such a gift is administered according to the intention of the donor, the property is used for charitable purposes. Adams' Eq. 172; American Academy of Arts v. Harvard College, 12 Gray [Mass.] 582, 594."

Perhaps the most comprehensive definition, and one that has received widespread acceptance and approval, is that of Judge (afterwards Justice) Gray in Jackson v. Phillips, 14 Allen (Mass.) 539: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

This definition of charity has been expressly approved in the following Missouri cases: Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369; Newton v. Newton Burial Park (Mo. Sup.) 34 S.W.(2d) 118, 120; In re Rahn's Estate, 316 Mo. 492, 511, 291 S. W. 120, 51 A. L. R. 877; Robinson v. Crutcher, 277 Mo. 1, 8, 209 S. W. 104; Catron v. Scarritt Collegiate Institute, 264 Mo. 713, 725, 175 S. W. 571; State ex rel. v. Powers, 10 Mo. App. 263, 266.

Many more definitions and citations of the same general character might be added, but the foregoing would seem to be sufficient to establish the general, as well as the specific, holding and policy of Missouri.

■ In the light of these established principles, we turn to an examination of the several purposes stated in the will to which the trustees are directed to apply the residue of the estate, devised by article seven thereof. These purposes are declared in the following terms: "Charitable, benevolent, hospital, infirmary, public, educational, scientific, literary, library or research." Every one of these named purposes falls within the classification employed in the Statute of Elizabeth, or clearly "within its spirit, equity, and analogy." The first challenge made by appellants is that "the testator has failed himself to designate any charitable use or uses in the legal acceptation of the term to which the funds must be devoted." The word "charitable" speaks for itself. While it is probably true that a bequest for private benevolence or charity could not be supported as a trust for charitable purposes, it would seem equally true that a benevolent public purpose, coming within the accepted classification, would support such a trust. The term "benevolent" follows immediately after "charitable," which is the introductory and dominant word in designating the purposes of the trust; it is linked with other terms either specifically covered in the Statute of Elizabeth or clearly within its "spirit, equity and analogy." The words "charitable" and "benevolent" are intimately associated in laws and letters and in the minds of men; in the lexicons the two words are defined interchangeably, and both will support a public trust for charitable uses. Hospitals and infirmaries are provided for the relief of the sick and infirm; educational, scientific, literary, library, and research purposes may be considered together. All are "designed to promote the public good by the encouragement of learning, science, and the useful arts." State ex rel. v. Academy of Science, supra. We think the only purpose enumerated which could challenge even passing criticism is the word "public." Standing alone, its efficacy might perhaps be questioned, but it is quite evident that the term was used to distinguish between private and public trusts, and to stamp the bequest as one designed for a "beneficial public purpose" to promote the "public convenience" and for "lessening the burdens of government." It comes within the public improvements provision of the Statute of Elizabeth; because all the purposes to which the funds devised are to be devoted must be determined by the trustees to be in the public interest, that must be in the exercise of a sound discretion, subject to review by a court of equity. We hold with Judge Sherwood in Missouri Historical Society v. Academy of Science, supra, that any gift, which is a charity within the mean-

778

ing of the definitions and authorities cited, is none the less so "because not so denominated in the instrument which evidences the gift;" and further that "if such a gift is administered according to the intention of the donor, the property is used for charitable purposes." State ex rel. v. Academy of Science, supra. We repeat the significant language of the Supreme Court of Missouri in the very late case of St. Louis Union Trust Company v. Little, 320 Mo. 1058, 1073, 10 S.W.(2d) 47, 53: "It matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the courts will give effect to his intention as it may be gathered from the whole instrument [Cross v. Hoch, 149 Mo. 325, 50 S. W. 786]."

Such an intention is to be gathered, not only from the four corners of the will, to which we are not limited, but by evidence aliunde as to the conditions and surroundings of the testator. Board of Trustees v. May, supra. Mr. Loose, separated from his wife, upon whom he had made a satisfactory settlement, found himself practically alone in the world, without parents, brothers, sisters, or children, who would have a more natural and primary claim upon his bounty. His father and uncle made large gifts to charity. In their wills, his sole remaining next of kin, appellants herein, had received generous consideration. With the residue of his estate he desired to establish an impressive memorial to his deceased mother; and no obligation, legal or moral, stood in the way of this desire. Accordingly, by paragraph (g) of article seven of the will, he provided that in some building, of any institution which should receive any benefit from the trust, should be placed a memorial tablet of the character hereinabove set out; he recommended that his trustees should, if possible, become members of the governing boards of such institutions, and should not thereby become disqualified or subject to criticism; and, in further evidence of his intention to establish a charitable trust, he mentioned a number of institutions in Kansas City (conceded to be charitable in character) in behalf of which he recommended every possible preference and consideration. This expression in the will itself approaches a construction by the testator of the class of beneficiaries contemplated by the language of the devising article; at least it stamps the devise as highly charitable in its nature. To avoid misunderstanding, we do not hold that the discretion of the trustees is limited by this language (which was "a recommendation and nothing else") to beneficiaries of the precise class thus indicated. It would seem, therefore, that, from the language used, as well as from matters aliunde, the evidence to be gathered from a consideration of the entire will, the environment of the testator, and his domestic status, the bequest contained in article seven of the will was clearly a charitable bequest; that the word "charitable" is the dominant word, coloring and conditioning those which follow, and that an overriding charitable intent is disclosed.

■■ It is next urged that the testator has failed to designate a class or classes of beneficiaries from which the ultimate individual recipients of the trust funds may be selected; that the attempted trust is therefore void for vagueness, indefiniteness, and uncertainty; that the testator cannot thus delegate the selection of the ultimate beneficiaries to trustees, who, in the exercise of their absolute discretion, are not subject to the control of the courts. These specifications are so interwoven in their nature, and in their treatment by the courts, that they will be considered together.

It can hardly be said that the testator has failed to designate a class or classes of beneficiaries from which recipients of the trust may be selected. For example, hospitals, infirmaries, libraries, and educational and scientific institutions generally, are recognized as legitimate objects of charitable endowment. To be sure specific institutions are not named; but the purposes stated are definite, and sufficiently designate the classes to which the trust fund is to be devoted. Uncertainty as to individual beneficiaries is characteristic of a charitable use. Perry on Trusts (7th Ed.) § 732.

In Chambers v. City of St. Louis, 29 Mo. 543, the testator left his property in trust to "constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way, bona fide, to settle in the west." The selection and determination of the eligible individual beneficiary was left to the city as a trustee. The devise was upheld.

In Howe v. Wilson, 91 Mo. 45, 3 S. W. 390, 60 Am. Rep. 226, a fund was left to a trustee to divide "among such charitable institutions of the city of St. Louis, Mo., as he shall deem worthy." Judge Black, speaking for the Supreme Court of Missouri in that cause, discussed the case of

Saltonstall v. Sanders, 11 Allen (Mass.) 446, in which the testator gave the residue of his estate to his executors, as trustees, to hold and invest the same and the income in such manner as might seem expedient, and, among other things, "in aid of objects and purposes of benevolence or charity, public or private." Also, Miller v. Teachout, 24 Ohio St. 525, wherein the will contained the following clause: "I direct that my said executor shall appropriate and use all the residue of my estate for the advancement and benefit of the Christian religion, to be applied in such manner as in his judgment will best promote the object named."

Judge Black adds that the gift was held to be valid "because the testator had invested the executor with power to specify the particular use of the fund, and all objections because of uncertainty were thereby removed." He concludes as follows:

"The foregoing examples will serve to show that if the general objects of the bequest are pointed out, or if the testator has fixed a means of doing so by the appointment of trustees with that power invested in them, then the gift must be treated as sufficiently definite for judicial cognizance, and will be carried into effect. Perhaps the rule may be stated more favorably to the validity of the trust. Perry, Trusts, §§ 720, 732.

"But we have no occasion to go any further in this case. Here the testator has provided a means for making that certain which otherwise might appear to be uncertain. We see no difficulty in upholding the gift in this case. It comes fairly within that class of charities where the courts can and will direct the trustee to carry out the will of the testator."

In Powell v. Hatch, 100 Mo. 592, 14 S. W. 49, a will devising a fund to a trustee to be devoted "to such charitable purposes as my said trustee may deem best," was upheld.

In Sappington v. School Fund Trustees, 123 Mo. 32, 27 S. W. 356, the contention arose over a clause in the will which authorized the trustees, upon certain happenings, "to apply the interest of said fund to such other objects of charity in said county as in their judgment may be most needy." The court, speaking through Judge Sherwood, said: "Here there is a trustee with power to make the gift definite and certain, and power in a court of equity to see that the trustee does not commit a breach of his trust, and to compel its observance by him," citing

2 Perry on Trusts (4 Ed.) sec. 719; Chambers v. City of St. Louis, 29 Mo. 543; and Howe v. Wilson, 91 Mo. 48 [3 S. W. 390, 60 Am. Rep. 226], among other cases.

In Sandusky v. Sandusky, 261 Mo. 351, 168 S. W. 1150, the contest arose over a provision in the will that the trustees might use the fund "secondarily for the general advancement of Christianity." The court said, loc. cit. 358 of 261 Mo., 168 S. W. 1150, 1151: "The provision for the 'general advancement of Christianity' does not avoid the bequest. A trustee is provided for who shall determine the particulars as to the application of the fund. 'Id certum est quod certum reddi potest.' Howe v. Wilson, 91 Mo. 45, 3 S. W. 390, 60 Am. Rep. 226."

In St. Louis Union Trust Company v. Little, page 1058 of 320 Mo., 10 S.W.(2d) 47, 49, a clause in the will under consideration gave $5,000 to a trustee "to be spent on the welfare of poor, homeless children." This gift was attacked as "too indefinite to be a valid bequest." The court in sustaining this clause of the will quoted liberally and with approval from Chambers v. City of St. Louis, and announced that the rule therein stated has ever since been followed in Missouri. Inasmuch as the language in that case is especially pertinent here, we quote somewhat more at length, including that part of the opinion quoted in St. Louis Trust Company v. Little: "The only remaining question to be considered is whether the trust of this will can be enforced on account of the uncertainty of those who are to be benefited by it. The case, as we view it, shows that there is a valid devise to a trustee capable of taking the subject of the device and competent to undertake and execute the trust with which the devise is clothed. As the general object of the charity was specific and certain, and not contrary to any positive rule of law, with a competent trustee to execute the charity designated, we do not see on what ground this objection can rest. If, under such circumstances, the uncertainty of the persons to be relieved by a charitable fund could be available to destroy it, few charities could be sustained. If all the recipients of a charity could be designated with certainty at the time of its creation, there would be no necessity for a law for charitable uses different from that which governs all other trusts. The only difficulty in the way would be the law against perpetuities, and that would not exist where the donation in trust was made to a corporation. From the very nature of the subject,

charitable gifts must be objects vague and uncertain. The subjects of the charity may be numerous, and they are to be sought for and ascertained by those to whose discretion and judgment the dispensation of the relief is entrusted. The founder of a charity, by placing his fund in the hand of a competent trustee, designating the general object of the trust, with power to carry that object into effect, makes the trustee his substitute or delegate. Can not any individual, who has the means, employ them for the relief of 'poor emigrants and travelers coming to St. Louis on their way to settle in the west?' If he can carry out this charity himself, may he not appoint another to do it for him? Could it be objected to such a course that the trustee would not know how to act? As the donor of the bounty is willing to confide its management to the discretion of his agent, so long as that agent acts in good faith his acts are the acts of his principal, and there is no one but the principal to complain. If the agent abuses his trust, he, like all other fiduciary agents, is subject to the control of the courts." Chambers v. City of St. Louis, 29 Mo. 543, loc. cit. 589, 590.

The principle of construction here announced has been followed generally in Missouri, receiving express approval, as we have seen in the late case of St. Louis Union Trust Company v. Little, supra. We have no hesitation in saying that the doctrine announced in the Chambers Case stands to-day as the established rule in Missouri. In the case at bar, the objects of the charitable devise are sufficiently definite, and its application has been confided to trustees, as delegates of the testator. These trustees are of course subject to control by the courts, if they should seek to depart from the clear charitable purposes contemplated by the will.

In Buckley v. Monck, 187 S. W. 31, 34, the Supreme Court of Missouri points out that "in their desire to preserve these public benefactions the courts have uniformly held that, although they be ever so general in their nature, if a trustee is appointed on whom the donor confers his right to select from them the real objects of his bounty, the trust will be upheld."

As said further in Chambers v. City of St. Louis, loc. cit. 589 of 29 Mo.: "We can not be persuaded that it is a valid objection to a charity, that from a possible abuse in its administration an injury might result to the interests of the society in which it is located. Such an objection would prove fatal to the existence of most charities. More-

over, the trustees in the management of the trust would be subject to the control of the courts, and for a wilful violation of their duty they might, like all other trustees, be displaced."

In Catron v. Scarritt Collegiate Institute, 264 Mo. 713, 726, 175 S. W. 571, 574, the court, after considering with approval Judge Gray's definition of a charity, above set forth, quote thus fully from 5 Ruling Case Law 322, 323: "Reverting to the definition of a legal charity, it will be easily seen that it is impossible to specify the innumerable objects or purposes for which a charitable trust may be created. The difficulty is inherent in the subject-matter itself. A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, or of a community, or of some class forming a part of it, indefinite as to numbers and individuals. It may, but it need not, confer a gratuitous benefit upon the poor, or look to the care of the sick or the insane, or seek to spread religion or piety. Schools and libraries, equally with asylums, hospitals, and religious institutions, are included within its scope. Therefore the enforcement of charitable uses cannot be limited to any narrow and stated formula. As has been well said, it must expand with the advancement of civilization and the daily increasing needs of men. New discoveries in science, new fields and opportunities for human action, the differing condition, character, and wants of communities and nations, change and enlarge the scope of charity; and, where new necessities are created, new charitable uses must be established. The underlying principle is the same; its application is as varying as the wants of humanity. Charity, in its legal sense, comprises four principal divisions: Trusts for the relief of poverty; trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community, not falling under any of the preceding heads. The trusts last referred to are not the less charitable in the eye of the law, because incidentally they benefit the rich as well as the poor, as indeed every charity that deserves the name must do, either directly or indirectly."

Since the decision in this case must be ruled by the law of Missouri, as established by its courts of last resort, we have thought it desirable, if not necessary, even at the expense of unfortunate length of this opinion, to reveal by quotation, rather than by bare assertion coupled with citation, the

consistent underlying policy which has been maintained in that state since the leading case of Chambers v. City of St. Louis. We are not unmindful of the fact that the in-dustry of able counsel for appellants has adduced a number of Missouri decisions which they conceive to be at variance with this conclusion. These citations have been given full consideration. At the close of an exhaustive brief, counsel for appellants say: "On the proposition that this attempted trust is void for being vague, indefinite and uncertain, we rely upon the following authoritative cases decided by the Missouri Supreme Court: Schmucker's Estate v. Reel (1876) [61 Mo. 592]; Corby v. Corby (1884) [85 Mo. 371]; Board of Trustees v. May (1907) · [201 Mo. 360, 99 S. W. 1093]; Hadley v. Forsee (1907) [203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49]; Jones v. Patterson (1917) [271 Mo. 1, 195 S. W. 1004, L. R. A. 1917F, 660]; Robinson v. Crutcher (1919) [277 Mo. 1, 209 S. W. 104]; National Board of Trustees v. Fry (1922) [293 Mo. 399, 239 S. W. 519]; Wentura v. Kinnerk (1928) [319 Mo. 1068, 5 S.W.(2d) 66]; Chambers v. St. Louis (1860) [29 Mo. 543]; Buckley v. Monck ([Mo. Sup.] 1916) [187 S. W. 31]; St. Louis Union Trust Co. v. Little (1928) [320 Mo. 1058, 10 S.W.(2d) 47]."

In Schmucker's Estate v. Reel, the will contained three specifications which were held void. The first devised to the executor, as trustee, $200 "to be applied to a specific purpose which I have explained to him." The second, bequeathed to said executor the further sum of five hundred dollars "for another and specific charitable purpose which he well understands." The third bequeathed the balance of the estate "to apply in charity, according to his best discretion." It appeared from the testator's secret instructions to Reel, the executor, that these bequests were to be used for masses for the testator and his wife after death. The court found that such masses could be said only by a priest, and that the state Constitution in force when the will was made voided any gift or devise to any minister or preacher of the gospel, or to any religious sect, or for such support, use, or benefit. The bequests were held void, both because the purposes were not defined so that a court could carry them out, and because they were designed to evade the prohibitions of law, and were prohibited by the Constitution. This case is dismissed in Howe v. Wilson, 91 Mo. 45, 50, 51, 3 S. W. 390, 391, 60 Am. Rep. 226, in the following language: "The more recent case of Schmucker's Estate v. Reel, 61 Mo. 592, does not in the least conflict with Chambers v. City of St. Louis [supra], or with anything before stated in this opinion. In that case it clearly appeared that the executor took the bequest clothed with a trust for specific and definite purposes known to the executor, but not defined as stated in the will. As to the purposes not stated, it was as if no will had been made. The principal question in the case has no relevancy here whatever."

It is further distinguished in St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 1070, 10 S.W.(2d) 47, in which case the rule announced in Chambers v. City of St. Louis, is expressly declared to be the law in Missouri.

The cases of Corby v. Corby, 85 Mo. 371, and Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49, deal with the same will; that of John Corby who died in 1870, leaving all his property to his wife for life. The clause in question provided that the residue of his property, after certain bequests, was "given to advance the cause of religion and promote the cause of charity, in such manner as my dearly beloved wife may think will be most conducive to the carrying out of my wishes." In Corby v. Corby, supra, it was held that a precatory trust was not to be inferred from expressions of confidence or desire "on the part of the testator contained in the will regarding the use to be made of the property devised or bequeathed, unless it fairly appears from the will that the testator contemplated and intended to create such trust, and especially no such trust will be implied when it clearly appears from the will that the testator intended to give the devisee full discretion in the use of the property."

It was further held that the clause quoted above conferred upon the widow "no such powers of disposition as to enlarge her life estate to a fee or to constitute her a trustee for the heirs at law, the objects of the religious and charitable uses contemplated by these provisions being alleged to be illegal."

Many years later, after the death of the widow, the Attorney General of the state brought suit on the theory that, after the life estate of the widow was terminated, the remainder was given in trust for charity. Hadley v. Forsee, supra. In the latter case, the court held: "That the testator gave the courts to understand that he had confided to his wife his purpose as to the particular

church or charity he had in mind, and she being dead there is no such trust for a charitable or religious use created in the will as a court of chancery can enforce."

The Supreme Court in Harger v. Barrett, 319 Mo. 633, 640, 5 S.W.(2d) 1100, 1103, disposes of Hadley v. Forsee, thus: "It was upon this second paragraph that the plaintiffs based their action to enforce a public trust. In construing the same, this court held that it was not void for uncertainty, but, while clearly defining the testator's intention, could not be enforced, because the wife, the trustee, to whom he confided his purpose as to the particular church or charity he had in mind, was dead, and the objects of his bounty were impossible of determination."

To the same effect, see St. Louis Union Trust Company v. Little, supra, loc. cit. 1069 of 320 Mo., 10 S.W.(2d) 47.

In Board of Trustees v. May, 201 Mo. 361, 99 S. W. 1093, 1094, the clause in dispute devised thus: "The remainder to be given to the Methodist E. Church, South, and missionary cause." . Held void by Judge Graves, who, after stating the rule of construction quoted on a previous page of this opinion, said: "Had she said 'to the Methodist E. Church, South, for missionary cause,' there would be less trouble, for in that instance we would have a trustee named in the will and an indication of how that trustee should apply and use the fund."

This is the view expressed by the same court in St. Louis Union Trust Company v. Little, supra, loc. cit. 1069 of 320 Mo., 10 S.W.(2d) 47.

In Jones v. Patterson, 271 Mo. 1, 195 S. W. 1004, L. R. A. 1917F, 660, a devise of property by the testatrix to her nephew "to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls," was held void for indefiniteness. The court conceded that the validity of the trust would not be defeated if the trust was sufficiently declared, saying: "By this sufficiency of declaration is meant the use of such words as will enable a court of equity to enforce the performance of the duty imposed on the trustee."

In St. Louis Union Trust Company v. Little, Jones v. Patterson, is brushed aside as in nowise impairing the Missouri rule established in Chambers v. City of St. Louis.

Robinson v. Crutcher, 277 Mo. 1, 209 S. W. 104, 105, had under consideration the following clauses of a will:

"Fourth. The residue of my property of whatsoever kind and wheresoever situate I will and direct shall be divided into three equal parts.

"Fifth. One of such third parts I give and bequeath to the capital of the township school fund of T. 54, R. 10 in Monroe county, Missouri.

"Sixth. One of such third parts I give and bequeath to the capital of the public school fund of Monroe county.

"Seventh. One of such third parts I give and bequeath to the capital of the public school fund of the state of Missouri and I direct my executor to pay over to the lawful custodians of the several public school funds mentioned in this and the two preceding clauses of this will the several shares given to said school funds as aforesaid."

It was decided by a divided court that there was a failure to separate the legal estate from the beneficial enjoyment; that, in as much as the instrument creating the trust, neither directly nor by reasonable implication, designated a donee who could take the legal title to the fund, the court was not authorized to appoint a trustee, and the trust therefore failed. The mere statement of the grounds for this decision shows that it has no application to the case at bar.

National Board v. Fry, 293 Mo. 399, 239 S. W. 519, is disposed of in its own opinion, and in that of St. Louis Union Trust Company v. Little, loc. cit. 1070 of 320 Mo., 10 S.W.(2d) 47, upon the stated ground that no trust was declared. The devise did not undertake to create a trust, but was absolute in its terms.

Wentura v. Kinnerk, 319 Mo. 1068, 5 S.W.(2d) 66, was a statutory will contest. The document was challenged on the sole ground that it was obtained through fraud and undue influence. The will contained a gift of the residue of the estate to "such charitable uses and purposes as he (the executor) may determine." In the course of the opinion, the court remarked that "bequests for purposes of benevolence and general liberality, such as the trustee shall approve or direct, can not be supported either as general trusts or for charitable uses." This statement was based apparently upon a misapprehension of the rule announced by Sir William Grant in Morice v. Bishop of Durham, who said (9 Vesey, Jr. Ch. R. 399, loc. cit. 403): "But this doctrine does not hold good with regard to trusts for charity. Every other trust must have a definite object. There must be somebody in whose

favor the Court can decree performance. But it is now settled, upon authority which it is too late to controvert, that where a charitable purpose is expressed, however general, the bequest shall not fail on account of the uncertainty of the object; but the particular mode of application will be directed by the King in some cases, in others by this court."

In any event, the statement in Wentura v. Kinnerk, supra, was entirely without the issues in that case, and was clearly obiter dictum, as expressly declared by the Supreme Court of Missouri in the later case of Kinnerk v. Smith, 41 S.W.(2d) 381. The remaining cases, Chambers v. City of St. Louis, Buckley v. Monck, and St. Louis Union Trust Company v. Little, have all received attention, and are authorities against, rather than for, appellants. In our opinion, these cases upon which appellants rely are, some of them, readily distinguishable; others, only in apparent conflict because of what may be termed a mistaken application of the same principle; still others, in which language, purely obiter, has been unnecessarily or inadvertently used, as revealed by an examination of the issues framed and by later comment of the same court. With respect to the charge that this bequest is too general and indefinite, the ruling in Jones v. Patterson, and the dictum in Wentura v. Kinnerk, are expressly bottomed upon a misapprehension of the holding in Morice v. Bishop of Durham, supra. In so far then as these cases, upon which appellants chiefly rely, are deemed to be in conflict with the principle announced in Chambers v. City of St. Louis, St. Louis Union Trust Company v. Little, and others of like tenor, they are not in harmony with the great body of Missouri decisions, and do not express the policy of that state with respect to charitable uses and trusts. If, however, it be considered that such cases establish a contrariety and conflict of decision in the Missouri courts, we might be free to exercise our independent judgment as to the rule which should be applied in the instant case. In that event, our judgment, based upon the great weight of controlling authority, would not be otherwise. To this effect, we do not deem it necessary to expand this opinion by further citation.

Unfortunate experiences in cases where conditions, changing with time and circumstances, have rendered wills, making perpetual bequests to narrowly defined and unalterable uses, inoperative and well-nigh impossible of literal execution, undoubtedly moved the testator to adopt a specification of charities as flexible and general as the law would permit. In this we think he has been successful.

We conclude that, by article seven of his will, Mr. Loose created a charitable trust; that the class or classes of beneficiaries from which the ultimate individual recipients of the trust funds may be selected have been designated with sufficient definiteness; that all the purposes enumerated in the will are charitable in literal meaning or connotation under the law of charitable uses prevailing in the state of the testator's domicile; that the testator has named trustees to whom he has legally delegated the power to carry into effect the general object of the trust created; that thereby the ultimate beneficiaries of the trust may be made certain; that such trustees are subject to control by the courts, to enforce the trust imposed, and to prevent departure from the charitable purposes declared. It follows that the trust thus created is valid and should be upheld. The decree below is affirmed.